STATE of Wisconsin, Plaintiff-Appellant,

v.

Albert J. AMOS, Defendant-Respondent.†

Court of Appeals

*No. 97–3044–CR. Submitted on briefs May 11, 1998.—Decided July 2, 1998.*

(Also reported in 584 N.W.2d 170.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mary Ellen Karst*, assistant district attorney for Dane County, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Brian C. Findley*, deputy first assistant state public defender, Madison.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

ROGGENSACK, J.   The State appeals an order suppressing evidence which it sought to introduce in its prosecution of Albert Amos for possession of cocaine with intent to deliver. The State assigns error to the circuit court's determination that police officers lacked reasonable suspicion to stop Amos after observing what they thought to be an aborted drug transaction in the parking lot of a high drug trafficking area. For the reasons discussed within, we agree that the officers knew sufficient facts to justify the stop, and therefore we reverse the order of the circuit court and remand for further proceedings.

## BACKGROUND

On September 9, 1996, Amos drove his girlfriend to visit her aunt at an apartment complex. She asked him to wait in the parking lot while she determined whether she would need a ride to another location, or whether he could leave. After his girlfriend left, Amos sat in his car. Two uniformed police officers in an unmarked squad car observed him sitting in his car, which was backed into a stall in the parking lot.

The parking lot was in an area known to the arresting officers as a high crime neighborhood, in which parking lots were frequently used as open air drug markets. The lot was clearly marked with a no trespassing sign.[1] Additionally, the managers of apart-

---

[1] The sign read:

### NO TRESPASSING

Sec. 23.07(2), Madison General Ordinances, makes it unlawful for any person to enter or remain on any property of another or to enter or remain in any building of another after having been notified by the owner or occupant not to enter or remain on such premises. Any violator is subject to a penalty of not less than $50 nor more than $300 plus costs.

ment complexes in this area had requested police to strictly enforce trespassing ordinances, in an attempt to reduce the high volume of illegal drug activity which took place in parking lots.

Cory Nelson, one of the officers who participated in the arrest of Amos, was a member of the Dane County Narcotics and Gang Task Force. He had specialized training in recognizing street trafficking of controlled substances. In his experience, out-of-doors drug sales generally took less than one minute to complete.

Nelson, who was driving an unmarked squad car, briefly stopped to watch Amos because he appeared to be loitering in a parking lot which was located in a high drug-trafficking area and which had a no trespass sign. Nelson saw a woman approaching Amos's vehicle from the passenger side. The woman looked up; appeared to notice the officers when she was about three to five feet from the car; then she turned and walked away quickly, without making contact with Amos. The officers suspected that the woman had intended to purchase a controlled substance from Amos, in a manner common to that area, but that the deal had been aborted when she noticed them. Almost immediately thereafter, Amos drove out of the parking lot. Amos drove past the officers, who were parked by the side of the road.

The officers followed Amos until he turned into another parking lot, just a few blocks away. Nelson pulled in behind Amos and blocked his path of exit with the squad car. Nelson testified that when Amos began

---

Madison Police Officers are authorized to arrest any person violating this provision without any further additional warning or notice to you.

If you are <u>NOT</u> a resident or <u>NOT</u> here on official business with the owner or the owner's agent or a resident, leave the premises immediately.

to exit his vehicle, he asked him to return to it and also asked him for identification. He said he did so to determine whether Amos was trespassing and also to investigate what he believed to be suspicious circumstances in the first parking lot. His questions in this regard lasted approximately fifteen seconds. Nelson then asked Amos to step out of his vehicle and to consent to a pat down search. Amos agreed. The search revealed ten individually packaged rocks of cocaine. A struggle ensued and Amos was arrested and charged with possession of cocaine with intent to deliver, as a repeater and with a park penalty enhancer, contrary to §§ 961.41(1m)(cm)1., 961.48, 939.62, and 961.49, STATS.; battery to a police officer, contrary to § 940.20(2), STATS.; and resisting an officer, contrary to § 946.41(1), STATS.

Amos filed a suppression motion on November 6, 1996. The circuit court heard testimony on the motion on February 27, 1997 and on May 16, 1997. The court concluded that the officers lacked sufficient particularized information about Amos's conduct to support a reasonable suspicion for stopping him, and it ordered the drug evidence suppressed. The State appeals pursuant to the provisions of § 974.05(1)(d)2., STATS.

## DISCUSSION

**Standard of Review.**

■

When we review a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539, 547 (Ct. App. 1996). However, the application of constitutional principles to the facts as found is a question of law which we decide

without deference to the circuit court's decision. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47, 49–50 (Ct. App. 1995).

**Reasonable Suspicion.**

■

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. The detention of a motorist by a law enforcement officer constitutes a "seizure" of the person within the meaning of the Fourth Amendment. *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984). Statements given and items seized during a period of illegal detention are inadmissible. *Florida v. Royer*, 460 U.S. 491, 501 (1983). However, an investigative detention is not "unreasonable" if it is brief in nature, and justified by a reasonable suspicion that the motorist has committed, or is about to commit, a crime. *Berkemer*, 468 U.S. at 439; see also § 968.24, STATS. The same standards which have been established for rights arising in the United States Constitution apply to rights derived from the Wisconsin Constitution. *See* WIS. CONST., art. I, § 11; *State v. Harris*, 206 Wis. 2d 243, 259, 557 N.W.2d 245, 252 (1996).

■

According to *Terry v. Ohio*, 392 U.S. 1 (1968), the reasonable suspicion necessary to detain a suspect for investigative questioning must be bottomed on specific and articulable facts, together with rational inferences drawn from those facts, sufficient to lead a reasonable law enforcement officer to believe that criminal activity may be afoot, and that action would be appropriate. *Id.* at 21–22. "The question of what constitutes reasonable suspicion is a common sense test. Under all the facts and circumstances present, what would a reasonable

police officer reasonably suspect in light of his or her training and experience?" *State v. Jackson*, 147 Wis. 2d 824, 834, 434 N.W.2d 386, 390 (1989). The test is designed to balance the personal intrusion into the suspect's privacy occasioned by the stop against the societal interests in solving crime and bringing offenders to justice. *State v. Guzy*, 139 Wis. 2d 663, 680, 407 N.W.2d 548, 556 (1987).

In *State v. Young*, 212 Wis. 2d 417, 433, 569 N.W.2d 84, 92 (Ct. App. 1997), we determined that a defendant's presence in a high drug-trafficking area where he met briefly with another individual on a sidewalk in early afternoon, when coupled with an officer's experience that drug transactions typically took place during brief meetings on the street in that neighborhood, was insufficient to give rise to a reasonable suspicion of criminal activity. We reasoned that "stopping briefly on the street when meeting another person is an ordinary, everyday occurrence during daytime hours in a residential neighborhood." *Id.* at 429, 569 N.W.2d at 90. Although recognizing that police officers may explore conduct which has an innocent explanation when there is also a reasonable inference that the conduct is unlawful, we concluded that an inference of unlawfulness was not reasonable when the specified conduct described that of large numbers of innocent persons in the neighborhood. *Id.* at 429–30, 569 N.W.2d at 91–92.

The defendant argues that this case should be controlled by *Young* because there is nothing inherently suspicious about waiting for someone in a parking lot. However, this argument overlooks several factual distinctions between the two cases. First, the inference of illegal activity was stronger here than in *Young* because the lot was posted with a no trespassing sign

which showed that there were certain people who could not lawfully park in the parking lot. In *Young,* there was no reason to question whether Young was lawfully walking on the sidewalk. Second, Amos's explanation, that he had been waiting for a friend, was less compelling than that relied upon by Young because walking is the principal activity for which sidewalks were designed, whereas waiting in a car for a friend is only a secondary activity in a parking lot. Most people simply park their cars in the lot and leave.

The probability that the occupant of a parked car is doing something other than waiting for a friend is further strengthened when the occupant subsequently leaves without anyone joining him, but a person was seen approaching the car, appearing to recognize that police officers were nearby and moving quickly out of the parking lot. That Amos had been parked in the lot, for only a brief time is irrelevant, since the officers had no way of knowing how long he had been sitting there.[2] Reasonable suspicion is determined from the totality of the circumstances within an officer's knowledge. Here, the facts and circumstances within the officers' knowledge included not only Amos sitting in a parked car in an area where drug sales were commonly made from parked cars and where trespassing was not permitted, but they also included Amos leaving without a passenger. In addition, unlike *Young*, the officers in this case had reason to suspect that Amos had been trespassing. They did not see him go into or come out of the apart-

---

[2] One witness testified that she had seen the squad car behind Amos when he pulled into the first lot, from which it could be inferred that the officers should have seen Amos's girlfriend exit the vehicle in the first instance. However, the circuit court appeared to accept the officers' account that Amos's car was already parked when they first observed it.

ment complex, and they did not see him arrive with someone who entered the apartments. That he left after appearing to notice the officers could reasonably have suggested that he knew he had no lawful business in the parking lot. Evasion of the police may indicate a guilty mind, and may, by itself, raise sufficient suspicion to justify a brief investigative detention. *State v. Anderson*, 155 Wis. 2d 77, 79, 454 N.W.2d 763, 764 (1990). Again, while their suspicions were not the only explanations, they were reasonable, and the officers were entitled to investigate them, in order to confirm or dispel their suspicions.

The defendant argues that the police should not have been able to consider a possible trespassing violation in their calculation of reasonable suspicion because the Madison trespassing ordinance was overbroad as applied to him. However, while we agree that Amos could not have been convicted of trespassing under the ordinance on the facts he presented, the ultimate merits of the trespassing issue are irrelevant to whether the officers had a reasonable suspicion of illegal activity sufficient to stop Amos. *See State v. Princess Cinema of Milwaukee, Inc.*, 96 Wis. 2d 646, 649, 292 N.W.2d 807, 809 (1980) (a later determination that an ordinance relied on for an arrest is unconstitutional does not affect the validity of the arrest or provide a basis for the suppression of evidence because law enforcement should not be deterred from enforcing presumptively valid ordinances).

Finally, the defendant suggests that, because § 943.13, STATS., and MADISON, WIS., GENERAL ORDINANCE § 23.07(2) provide only forfeiture penalties, stopping him exceeded the reasonable scope of an investigation into a possible trespassing violation.

However, this argument ignores the fact that the officers also suspected Amos of dealing drugs. It is the totality of the circumstances with which the officers are confronted that must be evaluated in determining whether there was a reasonable suspicion for the stop. Therefore, we conclude that being in a no trespass area was part of the totality of the circumstances, as were the activities which occurred in the first parking lot, and taken together, they made the investigatory stop reasonable.

## CONCLUSION

The police officers in this case, knowing that drugs were being sold from cars in parking lots in the neighborhood and that managers of the apartments had requested enforcement of trespassing ordinances to reduce the volume of drug activity, were justified in stopping Amos to investigate possible trespassing and drug activity after they observed a woman turn away from the parked car in which Amos was sitting after she appeared to notice them, and then they saw Amos, himself, leave the parking lot immediately thereafter.

*By the Court.*—Order reversed.