# COURT OF APPEALS
# DECISION
# DATED AND FILED

## October 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1730-CR**

Cir. Ct. No. **2018CF909**

## STATE OF WISCONSIN

## IN COURT OF APPEALS
## DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

HOUADOU T. YANG,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Reversed and cause remanded for further proceedings*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    The State of Wisconsin appeals a circuit court order granting Houadou Yang's motion to suppress evidence derived from a stop of Yang's vehicle.  We agree with the State that police lawfully extended the stop to conduct a drug sniff of Yang's vehicle based on their reasonable suspicion that Yang was involved in illegal drug activity.  We reverse the suppression order and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2    The sole witness at the suppression hearing was a police officer involved in the stop of Yang's vehicle.  We refer to his testimony in describing the circumstances of the stop.

¶3    The officer had been employed by the City of La Crosse Police Department for twelve years.  He had both training and experience in drug interdiction.  On the day of Yang's stop, the officer was in an unmarked squad vehicle in the area of a Harbor Freight store around 4:55 p.m.  He observed two vehicles in the parking lot parked in close proximity to each other.  One of the vehicles was black with dark tinted windows, and the other vehicle was lighter in color.

¶4    As he observed the two vehicles, the officer noticed that a door was open on the lighter colored vehicle, and he saw a female from that vehicle standing and then approaching the driver's side of the black vehicle.  It appeared that she was approaching "very cautiously," looking to see if anyone was watching her.  As she got closer to the black vehicle's door, she began to look around more often.  When she spotted the officer's unmarked squad vehicle, she turned around without making contact with the black vehicle and went directly back to the lighter colored vehicle.

The driver in the black vehicle immediately began to back up and traveled out of the parking lot.

¶5      The location of the Harbor Freight parking lot was significant to the officer because police knew that area was frequently used for drug transactions. Police had conducted surveillance in the area for about six to eight months, and they had intelligence about the area from individuals involved in narcotics. Based upon his observations, and his knowledge of the parking lot's use for drug transactions, the officer suspected that he had witnessed an attempted drug transaction.

¶6      The officer initiated a stop of the black vehicle with the dark tinted windows. He testified that he initiated the stop because of the vehicle's excessively dark window tinting and because he believed that a drug transaction had been about to occur.

¶7      The officer contacted the black vehicle's driver, who was Yang. The officer had prior contacts with Yang and knew that Yang had a drug history involving narcotics. According to the officer, Yang appeared "incredibly" or "extremely" nervous. He stated that Yang "was sweating profusely from his brow line," that "his hands appeared to be shaky or trembling," and that his breathing was very rapid. Yang told the officer that he had been at the Harbor Freight parking lot to meet a friend.

¶8      After his initial contact with Yang, the officer contacted dispatch to send a "K-9" unit to the scene for a dog to conduct a drug sniff of Yang's vehicle. The officer could not recall how long it took for the unit to arrive and conduct the drug sniff. However, the parties' briefing indicates that they agree, based on a video recording from another officer's body camera, that the drug sniff extended the stop by no more than eleven minutes.

¶9     Yang moved to suppress evidence derived from what Yang contended was an unlawful extension of a traffic stop for a window tint violation. The circuit court granted the motion. The court appeared to conclude that, although Yang's initial stop was justified by a window tint violation, the police lacked reasonable suspicion of illegal drug activity that would have allowed them to lawfully extend the stop for the drug sniff.

## DISCUSSION

¶10     When reviewing a suppression issue, we "uphold the circuit court's findings of fact unless clearly erroneous." *State v. Kolk*, 2006 WI App 261, ¶10, 298 Wis. 2d 99, 726 N.W.2d 337. However, we "determine de novo whether the facts as found demonstrate a constitutional violation." *Id.*

¶11     The State argues that the police lawfully extended Yang's stop to conduct the drug sniff because, by the time the police on the scene contacted dispatch to send the K-9 unit, they had reasonable suspicion that Yang was engaged in illegal drug activity. Yang, in contrast, contends that the circuit court correctly concluded that the police lacked reasonable suspicion of illegal drug activity. Yang does not argue that extending the stop for up to eleven minutes to conduct the drug sniff was unlawful even if the police had reasonable suspicion of such activity. We agree with the State that the police reasonably suspected Yang of illegal drug activity and, on that basis, we conclude that the circuit court should have denied Yang's suppression motion.

¶12     Police may not extend a traffic stop to conduct an investigation of criminal activity "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *see also State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 ("An

expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion.").

¶13    "Reasonable suspicion exists if, under the totality of the circumstances, 'the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime.'" *State v. Rose*, 2018 WI App 5, ¶14, 379 Wis. 2d 664, 907 N.W.2d 463 (Ct. App. 2017) (quoted source omitted). "Reasonable suspicion must be based on more than an officer's inchoate and unparticularized suspicion or hunch." *Id.* (internal quotation marks and quoted source omitted). "An officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of the stop." *Id.* (internal quotation marks and quoted source omitted). "The burden of establishing that an investigative stop is reasonable falls on the State." *State v. Walli*, 2011 WI App 86, ¶7, 334 Wis. 2d 402, 799 N.W.2d 898.

¶14    Based on the totality of circumstances set forth above, we conclude that the State established that the police had reasonable suspicion that Yang was involved in illegal drug activity. The most pertinent facts, and reasonable inferences from those facts, can be summarized as follows: An officer with twelve years of experience, including training and experience in drug interdiction, saw a woman who appeared to have just exited a vehicle approach a nearby vehicle in a parking lot often used for drug dealing. She approached the other vehicle "very cautiously," seeming to look around for anyone that might be watching, and she looked around even more as she got closer to the vehicle. When she observed an unmarked police vehicle, she turned around and returned to her vehicle. The vehicle she was attempting to contact then immediately pulled out of the parking lot and drove away.

5

When police stopped the vehicle, the driver was Yang, someone with a known history of illegal drug activity. Yang appeared extremely nervous to one of the officers. Finally, Yang claimed to have been meeting a friend, an explanation that did not appear consistent with police observations.

¶15 Our conclusion that these circumstances satisfy the standard for reasonable suspicion is supported by *State v. Amos*, 220 Wis. 2d 793, 584 N.W.2d 170 (Ct. App. 1998). In *Amos*, police saw a suspect sitting in his vehicle in a parking lot with a posted no trespassing sign. *Id.* at 795. Police knew that parking lots in the area were frequently used as open air drug markets, and nearby property managers had asked police to enforce trespassing ordinances to reduce the high volume of illegal drug activity. *Id.* at 795-96. An officer observed a woman approach the suspect's vehicle, look up, appear to notice the police, then turn around and walk away without contacting the vehicle. *Id.* at 796. Almost immediately thereafter, the suspect drove out of the parking lot. *Id.* We concluded in *Amos* that the police were justified in detaining the suspect to investigate both possible trespassing and possible drug activity. *Id.* at 802.

¶16 Here, although there are no facts to indicate trespassing or a specific request for police enforcement, the circumstances are otherwise similar to those in *Amos* with the addition of several other suspicious factors that were not present in *Amos*. Those additional factors include Yang's known involvement in prior drug activity, testimony by an officer that Yang appeared extremely nervous, and Yang's questionable explanation for his presence in the parking lot.

¶17 Yang argues that his case is more similar to *State v. Young*, 212 Wis. 2d 417, 569 N.W.2d 84 (Ct. App. 1997), a case in which this court concluded that reasonable suspicion was lacking. We disagree. As summarized in *Young*, the

totality of potentially suspicious circumstances there consisted only of: "(1) presence in a high drug-trafficking area; (2) a brief meeting with another individual on a sidewalk in the early afternoon; and (3) the officer's experience that drug transactions in this neighborhood take place on the street and involve brief meetings." *See id.* at 433.

¶18 Yang argues that the circuit court made several factual findings that support the court's legal conclusion that reasonable suspicion was lacking. We again disagree with Yang. Yang misconstrues the circuit court's legal reasoning as fact finding, and he attributes factual findings to the circuit court that the court did not make. In reviewing the circuit court's reasoning, we see no factual findings or credibility determinations that undermine our de novo legal conclusion that the police reasonably suspected Yang of illegal drug activity.

¶19 Most notably, we disagree with Yang's assertion that the circuit court "found" that he was "not suspiciously nervous." Yang bases this assertion on the circuit court's review of the police body camera video and a statement by the circuit court that "[e]verybody's nervous" when stopped by police. However, the circuit court made no finding as to the nature or degree of Yang's nervousness, and we disagree with Yang if he means to argue that the court's decision necessarily implies a finding that he was not unusually nervous.

¶20 Finally, Yang relies on *United States v. Rodriquez-Escalera*, 884 F.3d 661 (7th Cir. 2018), to support his argument that the police lacked reasonable suspicion of illegal drug activity. Yang's reliance on *Rodriquez-Escalera* is not persuasive. First, the opinion in *Rodriguez-Escalera* reflects that the district court in *Rodriguez-Escalera* made the type of finding regarding nervousness that Yang appears to incorrectly attribute to the circuit court here. Specifically, the district

7

court in ***Rodriquez-Escalera*** found that the targeted suspects were not acting unusually nervous and, based on video and audio recordings, the court expressly rejected police officer testimony to the contrary. *See **id.*** at 666, 669. Second, unlike here, the facts in ***Rodriguez-Escalera*** do not indicate that the police had witnessed what appeared to be an attempted drug transaction, or that they were aware of a suspect's prior illegal drug activity. *See **id.*** at 668-69.

¶21 In sum, for the reasons stated above, we reverse the circuit court's suppression order and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).