**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 19, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP351-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF29**

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WAYNE L. TIMM,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Clark County: TODD P. WOLF, Judge. *Affirmed*.

¶1 NASHOLD, J.[1] Wayne Timm appeals a circuit court judgment convicting him of misdemeanor theft and property damage charges after he entered pleas of no contest. Timm also appeals the court's order denying his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

postconviction motion seeking to withdraw his pleas, and the court's subsequent order denying his motion to reconsider the postconviction order.[2] Timm argues that his judgment of conviction should be reversed because the court erroneously denied his motion to suppress evidence derived from a search of his vehicle, and he argues that the court erroneously denied his postconviction motion seeking a hearing on the issue of whether his trial counsel was ineffective. I reject Timm's arguments and affirm.

## BACKGROUND

¶2 In February 2016, the State filed a criminal complaint in Clark County alleging that Timm was involved in various burglaries that occurred in Clark County in April and May of 2015. Timm moved to suppress evidence derived from a vehicle stop that occurred in April 2015 in neighboring Marathon County. During that stop, law enforcement conducted a search of Timm's vehicle and discovered clothing and "burglarious tools." Based in part on evidence discovered in the vehicle search, law enforcement obtained a warrant to install a GPS tracking device on Timm's vehicle. The GPS data collected led law enforcement to a remote area where they found evidence, such as empty money bags, linked to the Clark County burglaries.

---

[2] Timm's Notice of Appeal includes the order denying his motion for reconsideration as one of the orders he appeals. Also, in his statement of the issues, Timm identifies the following as an issue presented on appeal: "Did the circuit court err in denying Timm's … motion to reconsider [the court's] postconviction decision without a *Machner* hearing?" *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). However, Timm makes no argument that the circuit court erred by denying his motion for reconsideration. Accordingly, I do not further discuss the motion for reconsideration. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (this court need not "review issues inadequately briefed").

¶3      A suppression hearing was held on December 21, 2016.  During the hearing, the County offered the testimony of Chief Shawn Bauer and Officer Travis Schuld of the Village of Spencer police department.

¶4      Chief Bauer testified to the following.  Bauer became familiar with Timm when he arrested Timm for burglary in Marathon County in 2010.  At some point during his investigations of Timm, Bauer interviewed Timm and Timm's brother, and during the interview, "one of the two brothers, I can't recall [which], … made mention that they've been involved in burglaries in the past and that they weren't going to stop doing this activity."  Bauer also learned that Timm had previously been arrested for burglary in Marathon County in 2006.

¶5      In early 2015, Bauer learned that Timm had been released from prison, and that Timm was driving a white Pontiac.  Around April 2015, Bauer became aware that burglaries were occurring in Marathon County and Clark County.  Based on Timm's history of involvement in burglaries, and based on his understanding that "burglars are known to keep doing that type of activity," Bauer suspected that Timm was involved in the local burglaries, and he instructed the officers in his department to "[k]eep an eye out for the white Pontiac" that Timm was driving.

¶6      Officer Schuld, a deputy in Bauer's department, testified to the following.  Around April 2015, Schuld was instructed to "keep an eye out for a white Pontiac Grand Prix" based on possible involvement with burglaries in the local area.  At approximately 11:40 p.m. on April 19, 2015, Schuld encountered Timm's white Pontiac in Marathon County.  Using radar, Schuld determined that the vehicle was going 31 miles per hour, which was above the posted 25 miles-per-hour speed limit.  Schuld initiated a traffic stop based on the speeding

violation. Schuld was aware that burglaries in the local area had been occurring at around the time of night that the stop occurred.

¶7    During the stop, Schuld shined a flashlight into Timm's vehicle. On the back seat, the officer observed a tire iron with what "looked like a flat end used to pry stuff open."[3] The tire iron was partially covered by a pair of jeans. According to Schuld, it was unusual to see a tire iron on the seat of a vehicle.

¶8    Upon making contact with Timm, Schuld informed Timm that he had been stopped for speeding, took possession of Timm's driver's license, and instructed Timm to remain seated in the vehicle. Schuld contacted dispatch and ran Timm's license information, and subsequently learned that Timm was "on probation for burglary and had a history of burglary charges."

¶9    Based on the circumstances, Schuld decided to conduct a search of Timm's vehicle. The officer asked Timm for consent to search, and, according to Schuld, Timm consented. During the search, Schuld found clothing and a canvas bag containing "burglarious tools," namely, "pry bars and also a bulk cutter."

¶10    Timm did not testify during the suppression hearing. According to his later postconviction submissions, Timm wanted to testify but his trial counsel told him he could not, and if he had been allowed to testify, he would have said that he did not consent to the search of his vehicle.

---

[3] The parties appear to dispute on appeal whether Schuld testified that he saw one tool (a tire iron with a "flat head") or two tools (a tire iron as well as an additional tool with a "flat head"), with the State suggesting there were two tools and Timm contending there was only one. To the extent there is any ambiguity about Schuld's testimony, it is resolved by the State's closing argument at the suppression hearing, during which the State conceded that Schuld saw a single tool, a "tire iron" that resembled a "pry bar," as distinguished from a "four-way tire iron that looks like an X."

¶11    In its closing argument, the State argued that the vehicle search was supported by probable cause to believe that Timm's vehicle would contain evidence of a crime, based on the department's knowledge of Timm's history of burglaries and Officer Schuld's observation of the tire iron. The State also argued that, regardless of whether there was probable cause, the search was lawful because it was consensual. The circuit court determined that the search was lawful based on Timm's consent and denied Timm's suppression motion on that basis. The court did not address whether the search was supported by probable cause.

¶12    In 2019, Timm pled no contest to two misdemeanor theft charges and three misdemeanor property damage charges, and the circuit court entered a judgment of conviction. In 2022, Timm filed a postconviction motion seeking to withdraw his no-contest pleas, arguing, among other things, that his trial counsel was ineffective because counsel refused to permit Timm to testify in his defense at the suppression hearing. The circuit court denied Timm's postconviction motion without granting him an evidentiary hearing. Timm appeals.

## DISCUSSION

¶13    Timm contends that the circuit court erred by:  (1) denying his suppression motion, and (2) denying his postconviction motion without granting him an evidentiary hearing.

### I.    Suppression Motion

¶14    This court follows a "two-step inquiry" in reviewing an order granting or denying a motion to suppress evidence. *State v. Howes*, 2017 WI 18, ¶17, 373 Wis. 2d 468, 893 N.W.2d 812 (quoted source omitted).  "First, we will uphold the circuit court's findings of fact unless they are clearly erroneous," and a

finding "is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285. "Second, we review the application of constitutional principles to those facts" de novo. *Id.*

¶15 "The right to be secure against unreasonable searches and seizures is protected by both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution." *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. "A warrantless search is presumptively unreasonable unless an exception to the warrant requirement applies." *State v. Prado*, 2021 WI 64, ¶38, 397 Wis. 2d 719, 960 N.W.2d 869. One such exception exists "[w]hen police have probable cause to believe that a vehicle contains evidence of a crime." *State v. Pozo*, 198 Wis. 2d 705, 710, 544 N.W.2d 228 (Ct. App. 1995). "The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *State v. Hughes*, 2000 WI 24, ¶21, 233 Wis. 2d 280, 291, 607 N.W.2d 621.

¶16 As noted above, although the State argued during the suppression hearing that the search of Timm's vehicle was supported by probable cause, the circuit court did not address this argument and instead determined that the search was lawful under a different exception to the warrant requirement: consent. *See State v. Artic*, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430 ("One well-established exception to the warrant requirement is a search conducted pursuant to consent."). Timm raises various challenges with respect to the consent determination. Timm also argues that the court erroneously denied his suppression motion because the search of his vehicle was not supported by reasonable suspicion. Because I conclude that the vehicle search was supported

by the requisite level of suspicion and therefore lawful under the Fourth Amendment, I do not address the consent issue. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶17    Before turning to the parties' arguments on reasonable suspicion, I pause to address an unexplained discrepancy between the parties' arguments before the circuit court and those on appeal.  Before the circuit court, the State argued that the warrantless search of Timm's vehicle was lawful because it was supported by probable cause—which, as noted above, is generally the level of suspicion required to support a warrantless search of a vehicle.  In contrast, Timm argued that the stop was not supported by probable cause.  However, in Timm's appellant's brief, he contends without explanation that the State need only meet the lower standard of reasonable suspicion, rather than probable cause.  The State appears to likewise apply the reasonable suspicion standard.  As explained below, the parties' reliance on the reasonable suspicion standard appears to be based on 2013 Wisconsin Act 79 ("Act 79").

¶18    Under various statutes enacted by Act 79, the level of suspicion required to support a warrantless search of a person, or any property under that person's control, is lower if that person is on "a specified probation, parole, or extended supervision status[.]" *Anderson*, 389 Wis. 2d 106, ¶2 & n.2.  Such a search need only be supported by reasonable suspicion, *id.*, ¶24, which is a lower level of suspicion than probable cause, *State v. Nimmer*, 2022 WI 47, ¶5, 402 Wis. 2d 416, 975 N.W.2d 598.  As noted above, Officer Schuld testified at the suppression hearing that, prior to searching Timm's vehicle, Schuld was aware that Timm was "on probation for burglary."  Nevertheless, during the suppression

proceedings before the circuit court, neither party argued that Timm was subject to Act 79, and instead the parties' arguments focused on whether the vehicle search was supported by probable cause. The court did not address whether probable cause was the appropriate standard, instead deciding the suppression motion on different grounds.

¶19 In light of the parties' agreement as to the applicability of the reasonable suspicion standard and the support for this standard found in Act 79, I apply the reasonable suspicion, rather than the probable cause, standard here. I now turn to the question of whether the vehicle search was supported by reasonable suspicion.

¶20 Reasonable suspicion must be based on "specific and articulable facts, together with rational inferences drawn from those facts, sufficient to lead a reasonable law enforcement officer to believe that criminal activity may be afoot." *State v. Amos*, 220 Wis. 2d 793, 798, 584 N.W.2d 170 (Ct. App. 1998) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). "Reasonable suspicion is a fairly low standard to meet," *Anderson*, 389 Wis. 2d 106, ¶33, and "[t]he information necessary to establish reasonable suspicion can be less in both content and reliability than the information needed to establish probable cause," *State v. Eason*, 2001 WI 98, ¶19, 245 Wis. 2d 206, 629 N.W.2d 625. "The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience[?]" *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997).

¶21 The State argues that the vehicle search was supported by reasonable suspicion based on the collective knowledge of Chief Bauer and Officer Schuld.

8

*See* ***State v. Gant***, 2015 WI App 83, ¶12, 365 Wis. 2d 510, 872 N.W.2d 137 (under the collective knowledge doctrine, in determining whether a Fourth Amendment intrusion is lawful, a court may take into account "both what the investigating officer knew individually and the collective knowledge of the police department"). Timm argues that the collective knowledge doctrine does not assist the State because the facts known to the officers did not constitute reasonable suspicion.[4] I agree with the State.

¶22 Chief Bauer was aware that Timm had been convicted for burglary in Marathon County on two prior occasions, and Officer Schuld was aware that Timm was on probation for burglary. Although prior criminal history may not in itself provide reasonable suspicion, it may be "considered as part of the totality of circumstances a reasonable officer takes into account[.]" ***State v. Kutz***, 2003 WI App 205, ¶17 n.4, 267 Wis. 2d 531, 671 N.W.2d 660. Here, Timm's prior history of burglary convictions is particularly noteworthy when placed in context. Bauer was aware that either Timm or Timm's brother had said "they weren't going to stop" committing burglaries, that Timm had recently been released from prison, and that there had been recent burglaries in the local area. Law enforcement could reasonably infer, based on these facts, that Timm might have been involved in the

---

[4] Timm also asserts in his reply brief that "neither the officer who made the stop nor the chief of police who directed the officer to make the stop had knowledge to constitute probable cause" to search the vehicle. To the extent that Timm intends to argue that the collective knowledge doctrine only applies if at least one officer has personal knowledge of all facts that constitute probable cause, I reject this argument because it is undeveloped. *See* ***Pettit***, 171 Wis. 2d at 647. Moreover, Timm's focus on whether an officer had "knowledge to constitute probable cause" is inconsistent with Timm's own arguments. As discussed above, Timm contends in his appellant's brief that the search of his vehicle need only be supported by reasonable suspicion, rather than probable cause.

local burglaries.  This information is properly considered in determining whether the totality of the circumstances establishes reasonable suspicion.

¶23    In addition, Officer Schuld testified that the time of night that Timm was pulled over, approximately 11:40 p.m., was "the time that the burglaries were occurring."  "Depending on the specific context and types of potential criminal activities at issue, the time of day may contribute to reasonable suspicion."  *State v. Meddaugh*, 2022 WI App 12, ¶22, 401 Wis. 2d 146, 972 N.W.2d 181.  Here, the fact that Timm was on the road at the time when the local burglaries had been occurring is a factor contributing to reasonable suspicion that Timm's vehicle might contain evidence related to the burglaries.

¶24    The most specific fact that the State relies upon to show reasonable suspicion is that Officer Schuld observed a tire iron on the back seat of Timm's vehicle.  Under the circumstances, law enforcement's observation of the tire iron tips the scales in favor of concluding there was reasonable suspicion for the search of Timm's vehicle.

¶25    Schuld testified that the tire iron had a "flat end used to pry stuff open" and that "pry bars" were "burglarious tools."  Prying implements, such as the tire iron Schuld observed, are well-established as tools commonly used in burglaries.  *See, e.g.*, *Dumas v. State*, 90 Wis. 2d 518, 519, 280 N.W.2d 310 (Ct. App. 1979) (defendant was convicted of "possession of burglarious tools" based on his possession of a "tire iron and a crowbar"); *see also* *State v. Lefler*, 2013 WI App 22, ¶¶12-13, 346 Wis. 2d 220, 827 N.W.2d 650 (officer's observation of "prying-type tools" in the defendant's car during an OWI stop contributed to probable cause to search the trunk for other "burglarious tools").  Schuld testified that it was unusual to see a tire iron on the back seat of vehicle.  Unusual facts,

though innocent by themselves, may, in context, "coalesce to add up to a reasonable suspicion." *State v. Waldner*, 206 Wis. 2d 51, 61, 556 N.W.2d 681 (1996). Additionally, Schuld testified that the tire iron was partially covered by clothing. An "apparent attempt to hide something" can contribute to the level of suspicion required for a vehicle search. *See State v. Grandberry*, 156 Wis. 2d 218, 225, 456 N.W.2d 615 (Ct. App. 1990).

¶26 Timm contends that the tire iron was not significant because "there was no indication that the tire iron was used in the commission of the burglary that was being investigated." Although the tire iron by itself may not have been indicative of criminal activity, reasonable suspicion is based on "the totality of the circumstances," and is "a fairly low standard to meet." *Anderson*, 389 Wis. 2d 106, ¶33. Here, the totality of circumstances provided law enforcement with reasonable suspicion to search the vehicle. These circumstances include Timm's history of burglary convictions in the local area; that Timm's release from prison coincided with recent burglaries in that area; that Timm was on the road at the time the local burglaries were being committed; and the officer's observation of the tire iron, a prying tool associated with burglaries, partially concealed in an unusual place in Timm's vehicle. Under the "common sense" reasonable suspicion test, *Young*, 212 Wis. 2d at 424, it was reasonable under the totality of the circumstances for law enforcement to suspect that evidence of the recent local burglaries could be found in Timm's vehicle.

¶27 Accordingly, I conclude the search of Timm's vehicle was lawful under the Fourth Amendment because law enforcement had reasonable suspicion to search Timm's vehicle. Therefore, the circuit court did not err in denying Timm's suppression motion.

## II.    Postconviction Motion

¶28    I turn to Timm's argument that the circuit court erroneously denied his postconviction motion alleging ineffective assistance of counsel.

¶29    The circuit court denied Timm's postconviction motion without holding a **Machner** hearing.  *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979); *see also* **State v. Jackson**, 2023 WI 3, ¶1, 405 Wis. 2d 458, 983 N.W.2d 608 ("A defendant is entitled to a **Machner** hearing if his postconviction motion sufficiently alleges ineffective assistance of counsel and the record fails to conclusively demonstrate that he is not entitled to relief.").   In reviewing a circuit court's decision denying a postconviction hearing without a **Machner** hearing, this court evaluates two issues de novo: "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief," and "whether the record conclusively demonstrates that the defendant is not entitled to relief."  *Id.*, ¶8.  If the postconviction motion "does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court may deny the motion without a hearing.  *Id.* (quoting **State v. Ruffin**, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432).  I need not address whether the record demonstrates that Timm is not entitled to relief, because, for the reasons explained below, I conclude that Timm's postconviction motion fails to allege sufficient non-conclusory facts that, if true, would entitle Timm to relief.  *See* **Barrows**, 352 Wis. 2d 436, ¶9.

¶30    Timm seeks in his postconviction motion to withdraw his pleas of no contest based on ineffective assistance of counsel.  A no-contest plea is "the functional equivalent of a plea of guilty."  **State v. Higgs**, 230 Wis. 2d 1, 9, 601

N.W.2d 653 (Ct. App. 1999). "To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice." *State v. Dillard*, 2014 WI 123, ¶83, 358 Wis. 2d 543, 859 N.W.2d 44. "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel." *Id.*, ¶84. To prevail in an ineffective assistance of counsel claim, a defendant must prove both "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the defendant fails to adequately show one prong of the *Strickland* test, we need not address the second." *State v. Elm*, 201 Wis. 2d 452, 462, 549 N.W.2d 471 (Ct. App. 1996).

¶31 To satisfy the prejudice prong when "defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness," the defendant must show, among other things, that the Fourth Amendment claim is meritorious. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also State v. Jackson*, 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999) (a defendant alleging that counsel failed to litigate a suppression issue competently must show that the suppression motion would have succeeded). To satisfy the prejudice prong in the context of a postconviction motion to withdraw a guilty plea, the defendant must show "'that there is a reasonable probability that, but for the counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial.'" *State v. Bentley*, 201 Wis. 2d 303, 312, 548 N.W.2d 50 (1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). As in other contexts, a defendant must make this showing when he or she seeks to withdraw a guilty plea based on trial counsel's alleged failure to litigate a suppression motion competently. *See Jackson*, 229 Wis. 2d at 343-44.

13

¶32 Timm argues that his trial counsel's performance was deficient and prejudicial because counsel would not permit him to testify at the suppression hearing. According to Timm, he would have testified that he did not consent to the search of his vehicle, and because he was not permitted to testify, he was unable to present crucial evidence to counter Officer Schuld's testimony that Timm consented.[5] I need not address whether Timm has alleged facts to show that trial counsel's performance was deficient, because I conclude that Timm cannot show that Timm was prejudiced by the allegedly deficient performance.

¶33 As explained above, law enforcement's search of Timm's vehicle was supported by reasonable suspicion. Therefore, the search was lawful under the Fourth Amendment even if Timm did not consent to it, and Timm's suppression motion is not meritorious. Thus, he cannot show that he was prejudiced by trial counsel's alleged failure to litigate the suppression motion competently. *See **Kimmelman***, 477 U.S. at 375. Accordingly, Timm was not prejudiced by trial counsel's allegedly deficient performance.

---

[5] Timm also asserts in his appellant's brief that he would have testified that he was not speeding. Timm's implication may be that he was prejudiced because he was unable to offer testimony to contradict the State's argument that there was reasonable suspicion for the initial stop of his vehicle. However, Timm only expressly argues on appeal that he was prejudiced by his trial counsel's "failure to counter the alleged consent." To the extent that Timm intends to argue that he was also prejudiced because trial counsel prevented him from testifying that he was not speeding, I reject this argument as undeveloped. *See **Pettit***, 171 Wis. 2d at 647 (this court need not address undeveloped arguments). Timm also alludes to a video, never offered by his trial counsel at the suppression hearing, which, according to Timm, would have bolstered his testimony that he was not speeding. This video is not in the appellate record. To the extent that Timm intends to argue that he was prejudiced by trial counsel's failure to introduce the video at the suppression hearing, I reject this argument because it is undeveloped, *see **id.***, and also because it relies on materials not in the appellate record, *see **id.*** at 646 ("An appellate court's review is confined to those parts of the record made available to it.").

¶34 Timm's prejudice argument fails for another independent reason. In Timm's postconviction motion and his appellate briefing, he argues that, absent trial counsel's alleged errors, he might have prevailed in the suppression motion. However, this is not the sort of prejudice that Timm is required to show. As stated, because Timm's postconviction motion seeks to withdraw pleas of no contest (the functional equivalent of guilty pleas), his motion "must allege facts to show 'that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Bentley*, 201 Wis. 2d at 312 (quoting *Hill*, 474 U.S. at 59).

¶35 Even if Timm's trial counsel had prevailed in establishing that the search of Timm's vehicle violated the Fourth Amendment, it does not necessarily follow that Timm would have insisted on going to trial. The State might have had a strong case against Timm based on other evidence not subject to the suppression motion, leading him to decide to plead no contest regardless. Timm fails to identify any facts alleged in his postconviction motion showing that the evidence discovered in the vehicle search (clothing and a canvas bag containing "burglarious tools") was a crucial part of the State's case, or that any other evidence the State later obtained pursuant to the GPS warrant was derivative of the challenged search.[6] In fact, Timm fails to identify any facts alleged in his postconviction motion or make any argument pertaining to the importance of the

---

[6] During the suppression hearing, the parties disputed whether other evidence obtained via a GPS warrant was ultimately derivative of the challenged vehicle search. Because the circuit court denied Timm's suppression motion, it declined to decide this issue. Timm makes no argument that the vehicle search led to the State obtaining further evidence against him via the GPS warrant, either in his postconviction motion or on appeal.

challenged evidence to his decision to plead no contest.[7] Thus, Timm has failed to allege facts demonstrating that, absent trial counsel's purported errors, there was a reasonable probability he would have insisted on going to trial rather than plead no contest.

¶36 Accordingly, I conclude that Timm has failed to make the required showing that he was prejudiced by trial counsel's alleged deficiencies, and Timm has not shown that the circuit court erred by denying his postconviction motion without a hearing.

## CONCLUSION

¶37 For all of these reasons, I affirm the circuit court's judgment of conviction, and affirm the court's orders denying Timm's postconviction motion and his motion for reconsideration.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] In his postconviction motion, Timm asserts that losing the suppression motion "ultimately led him to enter pleas of no contest." However, this conclusory statement is insufficient because it is unsupported by any alleged facts. *See State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608 (a postconviction motion must allege "material and non-conclusory facts" showing that the defendant is entitled to relief). Moreover, Timm does not revive this issue on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

16