STATE of Wisconsin, Plaintiff-Appellant,

v.

Phillip Brian CONAWAY, Defendant-Respondent.
[Case No. 2008AP1815-CR.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Craig GRIFFIN, Defendant-Respondent.
[Case No. 2008AP1816-CR.]

Court of Appeals

*Nos. 2008AP1815–CR, 2008AP1816–CR. Submitted on briefs August 10, 2009.—Decided December 23, 2009.*

2010 WI App 7

(Also reported in 779 N.W.2d 182.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Eileen W. Pray*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent Phillip Brian Conaway, the cause was submitted on the brief of *Philip J. Brehm* of Janesville; on behalf of the defendant-respondent Craig Griffin, the cause was submitted on

■

the brief of *Michael Shannon Murphy* of *The Law Office of Michael Shannon Murphy*, Janesville.

Before Dykman, P.J., Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. A police officer stopped a car because of a suspected window tint violation. The stop resulted in the discovery of heroin and drug paraphernalia. The occupants of the car, Phillip Conaway and Craig Griffin, moved to suppress the drug evidence, asserting that the stop was not supported by reasonable suspicion that the rear window failed to meet the applicable light-pass-through standard in the administrative code. The circuit court agreed and suppressed the evidence. The State appeals, arguing that the officer's suppression hearing testimony shows that he reasonably suspected a window tint violation. We affirm the circuit court's order granting the suppression motion.

## Background

¶ 2.   While exiting Interstate Highway 90, a police officer observed that the rear window of another exiting car "appeared to [have] dark window tint." Based on that observation, the officer activated his flashing lights and stopped the car. After the officer approached the car, he saw drug paraphernalia on the front passenger-side floor. A subsequent search of the car revealed heroin and additional drug paraphernalia. We recite additional facts as necessary below.

## Discussion

■

¶ 3.   The window tint regulation at issue here is easily summarized. Rear window tinting is permitted

only if the window allows at least 35% of light to pass through, except that the limitation does not apply to tinting done during the original manufacture of a vehicle.[1] Thus, for tinted rear windows, the regulation creates two factual issues: whether the 35%-light-pass-through requirement is met and whether the window is original equipment. A vehicle window might fail to meet the 35% requirement, but still comply with the statute if it is original equipment.

¶ 4.    In this case, we need only address the 35% requirement because we conclude that, regardless of whether the window was original equipment, the prosecutor did not present articulable facts supporting a reasonable suspicion that the rear window failed the 35%-light-pass-through requirement.[2]

---

[1] The portion of the code regulating rear window tint is as follows:

> (b) Tinting of the rear window is permitted as follows:
>
> 1. The window is tinted by the manufacturer of the glazing and is installed as part of the original manufacturing process.
>
> 2. The window is tinted by the application of tinting film to the inside of the glazing provided that the combination of the glazing and tinting film permits passage through the window of at least 35% of the visible light striking the window . . . .
>
> 3. If a rear window does not transmit at least 60% of the visible light striking the window, the vehicle shall be equipped with an outside rearview mirror on the left and right side of the driver's compartment.

Wis. Admin. Code § Trans 305.32(5)(b).

[2] The State's only attempt to deal with the factory equipment exception is its assertion in its "Summary of Argument" that the "only way to make that determination [whether the tinting was original equipment] would have been to ask the occupants of the car and require documentation." We deem this argument insufficient to merit our attention.

253

¶ 5. Reasonable suspicion does not require ruling out innocent explanations. *State v. Young*, 212 Wis. 2d 417, 430, 569 N.W.2d 84 (Ct. App. 1997). Rather, if any reasonable inference of wrongful conduct can be "objectively discerned," officers may temporarily detain an individual for purposes of investigation. *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990). Reasonable suspicion must be based on " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' " *State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990) (citation omitted). Whether a given set of facts satisfies the standard is a question of law that we review *de novo*. *State v. Sherry*, 2004 WI App 207, ¶ 4, 277 Wis. 2d 194, 690 N.W.2d 435.

¶ 6. According to the State, the circuit court erred by applying an erroneous standard. The State points to statements made by the circuit court suggesting that the court believed reasonable suspicion was not present because the officer could not tell with certainty that the window tint violated the regulation. Assuming for the sake of argument that the circuit court applied this incorrect standard, we nonetheless affirm.

¶ 7. It is true, of course, that the officer in this case did not need to be able to ascertain with certainty that there was a window tint violation. Officers need not, and likely cannot, distinguish with the naked eye small variations in the amount of light that passes through suspect windows. Reasonable suspicion does not require such precision. Rather, the officer need only reasonably suspect that the window violates the regulation. Focusing solely on the 35%-light-pass-through requirement, it would be enough, for example, if an officer testifies that he or she is familiar with how dark

a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing. Assuming, as we suggest above, that officers cannot tell by observation alone whether a window is precisely at the 35% standard, it follows that, if a window appears to be at about that standard, there is reasonable suspicion that it falls below the standard.

¶ 8. The problem for the State in this case is not that the officer was unable, before the stop, to conclusively determine that there was a window tint violation. Instead, the problem is that the officer did not provide any specific, articulable facts supporting reasonable suspicion of a violation. The State relies on the following assertions by the officer:

1) He had more than thirteen years of experience as a state trooper, which included training on use of a tint meter, a device that measures how much light is passing through a window.

2) He was aware of the rear window 35% requirement.

3) He had stopped between ten and one hundred vehicles for illegal window tint.

4) He stopped the defendants' vehicle because the rear window "appeared to [have] dark window tint."

These assertions do not, either individually or collectively, supply reasonable suspicion.

¶ 9. First, although an officer's experience is often relevant in a reasonable suspicion analysis, here the officer made no connection between his longevity or his tint meter training and his ability to differentiate between legally and illegally tinted glass. He did not, for example, say that he had experience in correctly iden-

tifying windows that failed the tinting limitation. Although the prosecutor repeatedly asked questions geared toward giving the officer an opportunity to state that he had some level of expertise in gauging window tint violation, the officer consistently denied having any such ability.

¶ 10.   Second, the fact that the officer knew that a tinted rear window must allow at least 35% of light to pass through does not show that he had the ability to look at a particular window and estimate whether it might fail the standard.

¶ 11.   Third, the fact that the officer had stopped numerous other vehicles for suspected window tint violations adds nothing. The officer did not testify whether his prior suspicions were ever verified by subsequent testing. So far as this record discloses, the officer might have a very poor track record.

¶ 12.   Fourth, undoubtedly the officer stopped the defendants' car because the rear window appeared to him to have "dark window tint," but, as with his thirteen years of experience, this statement says nothing about the officer's ability to distinguish between legal tinting and tinting that comes anywhere close to violating the code.

¶ 13.   In short, nothing in the officer's testimony provides a basis for a finding that the officer had the ability to judge whether a tinted rear window came close to or failed to meet the 35%-light-pass-through requirement. The reasonable suspicion standard was not met.[3]

---

[3] In *State v. Bailey*, 2009 WI App 140, 321 Wis. 2d 350, 773 N.W.2d 488, the defendant argued that reasonable suspicion was lacking because " 'no police officer could ever have a reasonable suspicion, based on observations with the naked eye,

### Conclusion

¶ 14.   We agree with the circuit court's conclusion that the stop was illegal. The State suggests no reason why, if the stop was illegal, the defendants' suppression motion should not have been granted. Accordingly, we affirm the suppression order.

*By the Court.*—Order affirmed.

---

that tinted glass allows a prohibited percentage of light to pass through.' " *Id.*, ¶ 23. We did not, however, address the argument because it was conclusory and underdeveloped. *Id.*