COURT OF APPEALS
DECISION
DATED AND FILED

January 20, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP372-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CM4005**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JALEN F. GILLIE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: DANIEL J. GABLER, Judge. *Reversed and cause remanded with directions*.

¶1    WHITE, J.[1]   Jalen F. Gillie appeals from a judgment of conviction for carrying a concealed weapon. Gillie, who pled guilty after the trial court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statues are to the 2017-18 version unless otherwise noted.

denied his suppression motion, argues that the trial court erroneously denied his motion to suppress because the police did not have reasonable suspicion to justify conducting an investigatory traffic stop. We agree. We reverse the judgment and remand with directions.

## BACKGROUND

¶2 Milwaukee police arrested Gillie during a traffic stop in late November 2018; he was charged with carrying a concealed weapon without a permit, possession of THC, and possession of cocaine. Gillie moved the trial court to suppress the evidence obtained during the stop. He argued that the police lacked reasonable suspicion for the stop, the police unlawfully extended the traffic stop without reasonable suspicion when the officer asked about the presence of a firearm and performed a Terry frisk of Gillie's person, and the police lacked probable cause to conduct a warrantless search of Gillie's vehicle.

¶3 At the suppression hearing, Officer Jose Rivera testified that he has been employed as a City of Milwaukee police officer for "over eleven years." His training included "six months at [the] Milwaukee police training academy." He is "a tintmeter-trained officer." He explained that this means he "learn[ed] how to observe legal and illegal tint through normal observation."

¶4 Ofc. Rivera testified that he conducted a traffic stop of Gillie's "silver Nissan four-door for suspected illegal window tint" in a dark evening in November 2018. Ofc. Rivera briefly observed Gillie stopped at a stop sign on West Garfield Road before he turned onto North Vel Phillips Avenue. Within seconds, the officer activated the lights and siren on the police car and Gillie promptly obeyed the signal to pull over.

2

¶5      Ofc. Rivera exited his own vehicle and while approaching Gillie's stopped vehicle, he ordered Gillie to lower the vehicle windows so he could see inside. Ofc. Rivera testified that "about halfway towards the vehicle, I observed the driver, who is the defendant, bend forward and reach down towards the driver floorboard." Ofc. Rivera testified that the bending down concerned him because in his "training and experience, it's consistent with someone attempting to hide a weapon or illegal contraband;" therefore, the officer "was fearful [Gillie] could be armed or attempting to conceal a weapon at that point."

¶6      Ofc. Rivera testified that he asked Gillie to show his hands, which Gillie did. The officer asked Gillie what he was reaching for, and he said "a cell phone." The officer asked Gillie if he had weapons, which Gillie denied, then the officer asked Gillie to exit the vehicle. When Gillie did not immediately comply, Ofc. Rivera opened Gillie's vehicle door, and Officer Zachary Ramion, his partner, took control of Gillie's hands. Gillie then exited the vehicle and Ofc. Rivera frisked him, finding no weapons or contraband.

¶7      Ofc. Rivera testified that he asked Officer Robert Gregory, who was on the scene, to search the "driver compartment and the area … [where] the defendant was reaching…." Ofc. Gregory found a loaded nine-millimeter firearm wedged between the driver's seat and the center console. Officer Rivera testified he asked Gillie if he had a concealed carry weapon (CCW) permit, which Gillie denied; the police confirmed Gillie did not have a CCW permit in a State of Wisconsin database. Ofc. Rivera testified that he saw a "clear corner-cut bag of suspected cocaine on the driver floorboard—and also searched the center console compartment of the vehicle and located suspected marijuana inside a plastic bag."

¶8     On cross-examination, Ofc. Rivera testified that he was "not sure" that he had told Gillie why he was being stopped, but based on his concern about Gillie bending to the floorboard, his own "safety was more important at that point." The officer testified that Gillie asked "what he was being asked to step out of the vehicle for" and "what he was being stopped for." Ofc. Rivera explained that "at some point, he was notified [why he was stopped]. I don't know at what point."

¶9     Additionally, Gillie played approximately a minute of the officer's body cam video footage taken during the stop and moved it into evidence. No narration of the video was provided in court; no transcript of the video was in the record. Trial counsel confirmed that Ofc. Rivera was "not the officer to conduct the tint review." Ofc. Rivera responded, "That's correct." There was no direct examination by the State about the body cam video footage; however, on redirect examination, Ofc. Rivera confirmed it was dark outside during the stop.

¶10     The trial court then examined Ofc. Rivera about two sections of the video. First, the court clarified that Ofc. Rivera opened the door to Gillie's vehicle. Second, the trial court confirmed that the gun was not visible from outside the vehicle. Ofc. Rivera testified the gun "was positioned … with the handle upward and the gun wedged between driver's seat, center console, kind of halfway down …. You actually had to kind of look in a little bit to see it, if that makes sense." He testified that "you can't see [the gun] from standing outside."

¶11     The State's second witness was Officer Casey Donahue of the Milwaukee Police Department, who testified he had been employed as a police officer for five years and he was trained and certified to use the tintmeter to measure tint on car windows. He explained that under city ordinance, the passage

of light "cannot be below fifty percent in the front windows and thirty-five percent in the rear windows." He testified that after the traffic stop, he conducted a tint reading of Gillie's vehicle and the driver's side front and rear windows and the passenger's side front and rear windows were all illegally tinted.

¶12     The trial court concluded the suppression hearing by making findings of fact. It found Ofc. Rivera's testimony was credible because it was consistent with the video footage from his body cam. The trial court found that Ofc. Rivera had prior experience "as a tintmeter operator as well as prior experience with actual observation of vehicles that are tinted and tinted illegally." The trial court found that Ofc. Donahue was dispatched to the same traffic stop and he conducted a tintmeter reading of Gillie's vehicle, finding illegal tint on multiple vehicle windows. The remaining findings focused on Ofc. Rivera's safety concerns, Gillie's cooperation with instructions even as he showed apprehension at exiting the vehicle, the frisk of Gillie's person, and the search of Gillie's vehicle—first only the "driver's space area of the cab" in which the gun was found, and then the entire vehicle which yielded cocaine and marijuana.

¶13     The trial court continued the hearing on Gillie's motion to suppress several days later. The trial court found that Ofc. Rivera's "observations, later confirmed by Officer Donahue's testing of the windows" were that the windows were "heavily tinted." The court concluded that there was reasonable suspicion to conduct a traffic stop because "an officer in Officer Rivera's position could reasonably conclude that Mr. Gillie's vehicle was in violation of" the municipal vehicle tint ordinances.

¶14     The trial court concluded that the traffic stop was not unreasonably prolonged. The court noted it "watched about a forty-five-second section of a

body cam relating" to the traffic stop and it was "quite amazed about how quickly all this happened." The trial court concluded that "[t]he police had a reasonable basis to be concerned for their safety, and based on their training and experience that Mr. Gillie may be either concealing contraband or a weapon," based on his "furtive movement coupled with Mr. Gillie's—at least his initial refusal to get out of the car, would heighten the police officer's concern … and it made perfect sense for the police to want to separate Mr. Gillie from the interior of his car." On Gillie's third issue, the trial court concluded that there was a legal basis to conduct a warrantless search of Gillie's vehicle because Ofc. Rivera found a baggie containing suspected cocaine on the floorboard. The trial court denied Gillie's motion to suppress on all bases.

¶15 After the motion to suppress was denied, Gillie entered into a plea agreement to resolve the charges. The State moved to dismiss and read-in the drug possession charges. Based on Gillie's guilty plea, the trial court found him guilty of carrying a concealed weapon and entered a judgment of conviction into the record. This appeal follows.[2]

## DISCUSSION

¶16 Gillie argues that the trial court erred when it denied his motion to suppress because the police lacked reasonable suspicion to stop him for having unlawfully tinted windows. We agree. We do not address Gillie's arguments about the unlawful extension of the traffic stop or the lack of probable cause for the search because our determination that the trial court erred in the first instance

---

[2] We note that Gillie may appeal the suppression ruling despite his guilty plea. *See* WIS. STAT. § 971.31(10).

6

by denying Gillie's suppression motion is dispositive. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶17    The Fourth Amendment guarantees individual security "against unreasonable searches and seizures." U.S. CONST. amend. IV. A traffic stop, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (citations omitted). An investigatory stop "must be based on more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry*, 392 U.S. at 21).

¶18    "Investigative traffic stops are subject to the constitutional reasonableness requirement." *Post*, 301 Wis. 2d 1, ¶12 (citation omitted). We follow a two-step process of review on questions of constitutional fact. "[W]e uphold a circuit court's factual findings unless clearly erroneous, but we independently determine whether those facts meet the constitutional standard." *State v. Samuel*, 2002 WI 34, ¶15, 252 Wis. 2d 26, 643 N.W.2d 423.

¶19    Gillie argues that the State has failed to prove that the police officers had reasonable suspicion to stop his vehicle based on suspected illegal window tint. The State contends that the stop was reasonable because the officer identified that Gillie's windows were illegally tinted. It is generally true that "an officer's

reasonable suspicion that a motorist is violating or has violated a traffic law is sufficient for the officer to initiate a stop of the offending vehicle." *State v. Houghton*, 2015 WI 79, ¶5, 364 Wis. 2d 234, 868 N.W.2d 143. In *State v. Conaway*, we analyzed a traffic stop for window tint violation and we concluded that an officer does "not need to be able to ascertain with certainty that there was a window tint violation. Officers need not, and likely cannot, distinguish with the naked eye small variations in the amount of light that passes through suspect windows. Reasonable suspicion does not require such precision." *Id.*, 2010 WI App 7, ¶7, 323 Wis. 2d 250, 779 N.W.2d 182. However, an officer must "reasonably suspect that the window violates the regulation" and articulate that suspicion in court, if challenged. *Id.*

¶20 Our question is quite narrow—whether the State proved that Ofc. Rivera had reasonable suspicion to stop Gillie.[3] We faced a similar situation in *Conaway*. There, we explained that an officer's testimony could be adequate to support reasonable suspicion "if an officer testifies that he or she is familiar with how dark a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing." *Id.*, ¶7. Here, the record made by the State does not satisfy that standard. Ofc. Rivera was not questioned about his observations of the vehicle windows, the window tint ordinances, or why he suspected Gillie's window tint to be as dark as or darker than the 35% or 50% light passage requirements under the vehicle window tint ordinances. Without the State producing testimony from Ofc.

---

[3] Most of the suppression hearing focused on whether it was reasonable to search Gillie's person based on the officer's safety concerns and whether there was probable cause to search the vehicle without a warrant. Our inquiry stops before that analysis.

Rivera that fulfills the *Conaway* standard, the record is devoid of specific articulable facts about that dark evening in November that would support reasonable suspicion for the stop.

¶21     In *Conaway*, we rejected that the State established reasonable suspicion "individually or collectively" on the basis that the law enforcement officer had (1) "more than thirteen years of experience as a state trooper, which included training on use of a tint meter[;]" (2) awareness of the administrative regulation that a rear window must permit passage of at least 35% of visible light; (3) experience stopping "between ten and one hundred vehicles for illegal window tint[;]" and (4) testimony that he "stopped the defendants' vehicle because the rear window 'appeared to [have] dark window tint.'" *Id.*, ¶8 (some alterations in original). Similarly, at Gillie's suppression motion hearing, Ofc. Rivera testified about his length of employment, his tintmeter training, and that he stopped Gillie for "suspected illegal window tint." We note that those statements were the totality of Ofc. Rivera's testimony about window tint. If the State did not establish reasonable suspicion with the officer's testimony in *Conaway*, then the State has failed to establish reasonable suspicion with a similar, undeveloped record here.

¶22     The State argues that *Conaway* is distinguishable because there is no indication that the windows were ever tested in *Conaway*, which would have shown that the officer was correct or incorrect. However, that argument misses the point: proving the windows were tinted after the fact does not show that the officer had reasonable suspicion to initiate the stop based on specific facts and not a hunch. Ofc. Donahue testified that the windows were illegally tinted; however, his testing occurred after the traffic stop was initiated. His testimony cannot cure what was not developed by the State in the record: namely the "specific,

articulable facts supporting reasonable suspicion of a violation" of window tint regulations before Ofc. Rivera initiated the traffic stop. *See id.*

¶23 This court does not speculate about what testimony could have been heard in the trial court or what arguments the State could have made; instead, we review the record before us. *See State v. Hogan*, 2015 WI 76, ¶43, 364 Wis. 2d 167, 868 N.W.2d 124 ("Upon careful examination of the record, we believe the State could have made a valid case that Deputy … had reasonable suspicion …. However, the case the State could have made in circuit court was not made…"). The trial court's findings that Ofc. Rivera observed heavily tinted windows in Gillie's car and stopped him as a result are not based on facts in the record. Even if that record existed, those facts alone would not satisfy the standards in *Conaway* or the common-sense test to determine reasonableness of the stop. *See Post*, 301 Wis. 2d 1, ¶ 13.

¶24 The trial court improperly relied on testimony about after-the-fact tint testing to conclude that reasonable suspicion existed for this traffic stop. Ofc. Rivera was not asked nor did he testify about how dark the window tint appeared based on his training, his awareness of specific vehicle window tint standards under the city ordinance, or his track record at recognizing illegal window tint. Further, the trial court's findings and conclusions that Ofc. Rivera observed heavily tinted windows in Gillie's car and stopped him as a result are not based on facts in the record. Therefore, the record does not support reasonable suspicion for the stop.

¶25 We conclude that the State failed to show that the traffic stop was constitutionally reasonable; furthermore, the trial court erred in ruling that the police had reasonable suspicion to stop Gillie's vehicle. Without a constitutionally

reasonable stop, the search and seizure of Gillie's person and vehicle violated Gillie's constitutional rights. Accordingly, the trial court's denial of Gillie's suppression motion was made in error. We reverse and remand with directions for the trial court to vacate the judgment of conviction, allow Gillie to withdraw his plea, and grant the suppression motion.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.