**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 23, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2023AP1529**
**2023AP1530**
**2023AP1531**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2022TR11268
2022TR11269
2022TR11270

**IN COURT OF APPEALS**
**DISTRICT IV**

TOWN OF DUNN,

PLAINTIFF-APPELLANT,

V.

BRIAN S. LAFLEUR,

DEFENDANT-RESPONDENT.

APPEALS from orders of the circuit court for Dane County: DAVID D. CONWAY, Judge. *Affirmed*.

¶1 KLOPPENBURG, J.[1] A law enforcement officer stopped a car driven by Brian S. LaFleur on suspicion that LaFleur had failed to obey signs

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

marking a road as "closed to through traffic," and the officer subsequently issued three traffic citations to LaFleur. LaFleur moved to suppress all evidence derived from the traffic stop. The circuit court determined that the stop was unlawful, granted LaFleur's motion, and dismissed the three cases in this consolidated appeal.[2]

¶2      The Town appeals, arguing that the traffic stop was supported by reasonable suspicion and that the circuit court erroneously granted LaFleur's suppression motion. I reject the Town's arguments and affirm.[3]

## BACKGROUND

¶3      The following facts are undisputed for the purposes of this appeal. At 8:37 p.m. on a Saturday in July 2022, a law enforcement officer was on patrol in his squad car on a road in a rural area of the Town of Dunn. The road is 6.2 miles long, running east to west. Numerous residences and farms, as well as a church and a business, are on the road. At the time in question, the road was under construction, and all access points to the road were marked with signs indicating that the road was "closed to through traffic."

---

[2] These appeals were consolidated for briefing and disposition by an order dated August 23, 2023. *See* WIS. STAT. RULE 809.10(3).

[3] In his respondent's brief, LaFleur makes two arguments in favor of affirming the circuit court's orders on alternative grounds; namely, he argues that the Town's notice of appeal was untimely, and that the Town cannot appeal the dismissal orders because they are the result of the Town's own motion to dismiss. I decline to address these arguments because my determination that the traffic stop was not supported by reasonable suspicion is dispositive. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). Further, I note that LaFleur previously filed a motion with this court arguing that the Town's notice of appeal was untimely, and this court rejected LaFleur's argument by order issued on September 13, 2023.

¶4      The officer encountered a car driven by LaFleur heading eastbound. Upon conducting a license plate check, the officer learned that the car was registered to LaFleur, and that LaFleur's address was in Stoughton, which is to the east of the road.

¶5      The officer followed LaFleur's car east for approximately one-half mile. LaFleur exited the road by taking a right turn at an intersection, and the officer subsequently initiated a traffic stop. According to the officer's later testimony, the officer suspected that LaFleur was "not local traffic" and had failed to obey the "closed to through traffic" signs. After an investigation, the officer issued a citation to LaFleur for failure to obey a traffic sign, as well as citations for operating while under the influence of an intoxicant and operating with a prohibited alcohol concentration.

¶6      The Town initiated these three consolidated cases by filing the citations. LaFleur moved to suppress evidence derived from the traffic stop, arguing that the stop was unlawful because it was not supported by reasonable suspicion. After an evidentiary hearing, the circuit court granted LaFleur's motion. Pursuant to the Town's subsequent motion to dismiss for lack of evidence, the court issued orders dismissing the three cases. The Town appeals.

**DISCUSSION**

¶7      "The right to be secure against unreasonable searches and seizures is protected by both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution." **State v. Dearborn**, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. "[A] traffic stop is a seizure within the meaning of our Constitutions." **State v. Floyd**, 2017 WI 78, ¶20, 377 Wis. 2d 394,

898 N.W.2d 560. "The burden of establishing that an investigative stop is reasonable falls on the state." *State v. Post*, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634.

¶8 "A traffic stop is reasonable at its inception if it is supported by reasonable suspicion that a traffic violation has been or will be committed." *State v. Adell*, 2021 WI App 72, ¶15, 399 Wis. 2d 399, 966 N.W.2d 115. Reasonable suspicion must be based on "specific and articulable facts, together with rational inferences drawn from those facts, sufficient to lead a reasonable law enforcement officer to believe that criminal activity may be afoot." *State v. Amos*, 220 Wis. 2d 793, 798, 584 N.W.2d 170 (Ct. App. 1998) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). "A reasonable suspicion determination is based on the totality of the circumstances." *State v. Genous*, 2021 WI 50, ¶9, 397 Wis. 2d 293, 961 N.W.2d 41.

¶9 This case involves the application of constitutional standards to undisputed facts, which presents a question of law reviewed de novo. *See State v. Rutzinski*, 2001 WI 22, ¶12, 241 Wis. 2d 729, 623 N.W.2d 516.

¶10 The Town contends that the traffic stop here was supported by reasonable suspicion that LaFleur was "operating his motor vehicle in violation of the road closure signage." The Town does not specify in its briefing which traffic law the officer suspected LaFleur of violating, but presumably the Town relies on WIS. STAT. § 346.04(2), which provides that "[n]o operator of a vehicle shall disobey the instructions of any official traffic sign or signal unless otherwise directed by a traffic officer." The parties appear to agree that the "closed to through traffic" signs here were official traffic signs, and that they prohibited drivers from using the road as a thoroughfare—that is, from using the road as part

of a route between two locations not on the road—but allowed drivers to travel to or from locations on the road.

¶11 The Town concedes that the officer did not observe LaFleur's car enter the road, and so was unable to determine whether LaFleur had lawfully "come from a property within the road closure." However, the Town argues that it was reasonable for the officer to conclude that the driver likely did not "reside in the closed area" because the car was registered to a non-local address. The Town also contends that the road is not in a "bustling urban area" where one would expect a high volume of non-local traffic on a Saturday evening. Under the circumstances, according to the Town, an "innocent explanation was no more likely than one that supported guilt," and the officer accordingly had reasonable suspicion that LaFleur was using the road as a thoroughfare in violation of the "closed to through traffic" signs.

¶12 The Town's argument has several weaknesses. The fact that LaFleur's car was registered to a non-local address does little, by itself, to support an inference that he was using the road unlawfully. The "closed to through traffic" signs did not limit traffic only to individuals residing on the road—instead, they permitted traffic going to or coming from locations on the road, regardless of the driver's place of residence. The Town notes that the officer observed LaFleur's car exit the road in the direction of LaFleur's registered address, suggesting that the driver "was likely on their way home." However, the signs did not prohibit a driver from using the road to return home, so long as the driver was returning from a location on the road.

¶13 The Town reasons that, because the road is "in a rural area," there are "fewer places for a person not from the area to visit" than in a more densely

5

populated area, and therefore it is more likely that a non-local driver is using the road unlawfully. However, as noted, there are numerous locations on the road (such as residences, farms, at least one business, and a church) that LaFleur might have been visiting. The Town identifies no evidence suggesting that the road is commonly used as a thoroughfare, rather than a means of travel to and from these locations. Moreover, the officer stopped LaFleur's car after following it for only a short distance: one-half mile of the 6.2-mile road. Under the circumstances, the officer could not have ruled out any significant number of possible lawful local origin points.

¶14 The Town further reasons that "there are 6 different places along the closed area for vehicles to exit the road once leaving a property within the closed area," and that a driver not traveling through would likely use one of those exits rather than exiting the road after traveling to its end. However, the Town does not explain why that contributes to reasonable suspicion that a driver exiting the road is violating the through traffic prohibition rather than heading from a location on the road.

¶15 The Town also relies on the time of day, contending that, at 8:37 p.m. on a Saturday, "[b]usiness owners, business customers and farm employees … are … not nearly as likely to be traveling this road for business or employment purposes." However, assuming this to be so, there were nevertheless numerous residences on the road. Saturday evening may not be a common time for business traffic, but it may be a common time for individuals making social visits to return home. The Town identifies no evidence suggesting that a driver may be more likely to use the road as a thoroughfare on a Saturday evening than at another time.

¶16    The Town notes that "[r]easonable suspicion does not require ruling out innocent explanations," *see* **State v. Conaway**, 2010 WI App 7, ¶5, 323 Wis. 2d 250, 779 N.W.2d 182, and contends that, under the circumstances, "the universe of innocent explanations" for LaFleur's conduct was limited. However, reasonable suspicion requires more than somewhat limiting the number of possible innocent explanations. Instead, reasonable suspicion must "be founded on concrete, particularized facts warranting suspicion of a specific individual." **State v. Richey**, 2022 WI 106, ¶9, 405 Wis. 2d 132, 983 N.W.2d 617. The facts on which the Town relies encompass a broad a range of common, lawful uses of a road closed to through traffic, and are not sufficiently particularized. As the circuit court aptly noted, accepting the Town's position would "impose too great of a burden on the Fourth Amendment rights" of non-local drivers using a road closed to through traffic for lawful purposes.

¶17    The Town also relies on, by distinguishing, **State v. Swiecichowski**, No. 2016AP1808-CR, unpublished slip op. (WI App Jan. 25, 2017), in which this court determined, based on facts similar to those here, that the traffic stop conducted by the officer was not supported by reasonable suspicion. The Town's attempts to distinguish that case are unpersuasive.

¶18    In *Swiecichowski*, the officer observed a car enter a road closed to through traffic, determined that the car was registered to a non-local driver, and performed an investigatory stop. *Id.*, ¶¶5-6. This court determined that the stop was not supported by reasonable suspicion because the officer's observations did not give rise to a "reasonable inference of wrongdoing," noting that "any number" of non-local drivers might have had lawful reasons to enter the restricted area. *Id.*, ¶15. For example, "[a] person delivering pizza to the area, visiting parents or a

7

relative, attending a Saturday night party, dropping off a date, or returning home using someone else's car … among many other reasons, would have had a reason to access the area closed to through traffic." *Id.* This court also stated that the officer "could have easily acquired more information to transform his hunch—or seen it dispelled—if he simply followed Swiecichowski to see where he went." *Id.*

¶19 Here, as in *Swiecichowski*, the officer did not observe the driver use the restricted road as a thoroughfare, and the officer's suspicion was based primarily on the fact that the car was registered to a non-local driver. In contrast to *Swiecichowski*, the officer here observed LaFleur exit, rather than enter, the restricted area. However, *Swiecichowski*'s reasoning, which I consider persuasive, applies equally here. Just as there are any number of lawful reasons why a vehicle registered to a non-local driver may enter a road closed to through traffic, there are any number of lawful reasons why that vehicle may exit the road. The facts known to the officer here, like the facts known to the officer in *Swiecichowski*, do not give rise to a "reasonable inference of wrongdoing."

¶20 According to the Town, *Swiecichowski* can be distinguished because, unlike the officer in that case, the officer here could not follow LaFleur to confirm or deny his suspicion that LaFleur had used the road unlawfully; rather, because LaFleur was exiting the road, the only way for the officer to determine "whether any innocent explanation actually existed" was to perform an investigatory stop. However, an investigatory stop must be supported by reasonable suspicion, and the Town cites no authority for the premise that this standard may be relaxed if law enforcement is unable to confirm or deny a hunch absent a Fourth Amendment intrusion.

¶21    In sum, I conclude that the Town has failed to meet its burden to show that, under the totality of the circumstances, the investigative stop of LaFleur's car was supported by reasonable suspicion that LaFleur had committed a traffic violation.  I therefore conclude that the circuit court did not err by granting LaFleur's motion to suppress.

**CONCLUSION**

¶22    For all of these reasons, I affirm the orders of the circuit court.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.