# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 6, 2025

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2024AP931-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CT209

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSEPH PAUL MORELLO,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: BARBARA W. McCRORY, Judge. *Affirmed*.

¶1 TAYLOR, J.[1] Joseph Paul Morello appeals his judgment of conviction for Operating While Intoxicated ("OWI") as a second offense and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

failure to install an ignition interlock device. Morello moved to suppress the evidence obtained from the traffic stop that led to his convictions, alleging that there was not sufficient evidence to support reasonable suspicion for the traffic stop. The circuit court denied Morello's motion and concluded that the traffic stop was constitutional because there was sufficient reasonable suspicion to believe that Morello's vehicle was connected to gunshots reported in the area. I conclude that the circuit court properly denied Morello's suppression motion, but I do so on the ground that there was reasonable suspicion to stop Morello for illegally tinted front side windows. Therefore, I affirm.

## BACKGROUND

¶2 The following facts are taken from the criminal complaint and the testimony of Officer Oscar Asilis at the circuit court hearing on Morello's Motion to Suppress that is at issue in this appeal.

¶3 Just after midnight on May 2, 2022, the Beloit Police Department received a report of gunshots fired in the area of the 1600 block of Hackett Street in Beloit. A law enforcement officer in the area also reported hearing gun shots, but located no physical evidence in the area of shots fired. A witness later reported seeing a dark colored pickup truck shining a laser in the area near Hackett Street just before the gunshots were reported. A few minutes later, the police received another report of gunshots in the area of the 1900 block of Afton Road in Beloit, a location several blocks away from the reported gunshots on Hackett Street. A witness reported seeing a black Chevy Avalanche pickup truck leaving the area of Afton Road shortly after the gunshots were reported. The responding law enforcement officer recovered empty gun cartridge casings in the area of Afton Road. At 12:50 a.m., a police officer reported seeing a black Chevy

2

Avalanche traveling quickly on a road in the vicinity of the two reported gunshot locations.

¶4 Officer Asilis with the Beloit Police Department was on patrol when law enforcement received the reports of the gunshots on Hackett Street and Afton Road. At 1:05 a.m., Asilis saw a black Chevy Avalanche driving in the area where the empty gun cartridge casings had been found. Before he activated his squad car's lights and siren, Asilis observed that the vehicle's front side windows were tinted, and he suspected that they may have exceeded the legal limit for window tint.[2] The window tint prevented Asilis from being able to see inside of the vehicle or distinguish any physical features of the occupants of the vehicle. Asilis testified that, except for the tinted windows, he observed no other traffic violations. Asilis did not have his tint meter with him in order to confirm his suspicion that the front side windows of the vehicle were illegally tinted. Asilis testified as to his training and experience with identifying illegally tinted windows, which is described in more detail below.

¶5 Asilis stopped the vehicle and made contact with the driver, later identified as Morello, who Asilis described as uncooperative and highly agitated. Morello initially refused to exit the vehicle. When Morello eventually exited the vehicle, Asilis approached Morello and smelled an odor of intoxicants on

---

[2] Specifically, Asilis testified that he suspected that the "front windows" of the vehicle were illegally tinted. The State interprets this testimony as referring to the "front side windows" of the vehicle, as that term is used in WIS. ADMIN. CODE § TRANS 305.32(4)(b) (Nov. 2024). Morello does not dispute the State's interpretation of Asilis's testimony. I therefore follow the parties' lead and infer that Asilis suspected that the vehicle's "front side windows" were illegally tinted.

All references to WIS. ADMIN. CODE ch. TRANS 305 are to the November 2024 register unless otherwise indicated.

Morello's breath. Asilis also observed that Morello had other signs of intoxication, including bloodshot and glassy eyes, drooping eyelids, and slurred speech. At this point, Asilis transitioned the stop to an OWI investigation. After performing several field sobriety tests on Morello and observing clues of intoxication, Morello consented to a blood draw, which later revealed a blood alcohol concentration of 0.125g/100mL.

¶6 Although Asilis mentioned the tinting of Morello's windows in his police report, Asilis did not testify that Morello's tinted windows were a reason for initiating the stop.

¶7 Morello was charged with one count of operating a vehicle under the influence of an intoxicating substance as a second offense, one count of operating with a prohibited alcohol concentration as a second offense, and one count of failure to install an ignition interlock device. Morello moved to suppress the evidence obtained as a result of the stop on the grounds that there was not reasonable suspicion to initiate the stop.

¶8 The circuit court denied Morello's suppression motion, concluding that there was reasonable suspicion to believe that Morello's vehicle was connected with the reported gunshots. The court did not mention the tinting of Morello's windows in its decision.

¶9 Two weeks after the circuit court denied Morello's suppression motion, our supreme court decided a case with similar facts, *State v. Richey*, 2022 WI 106, 405 Wis. 2d 132, 983 N.W.2d 617. In that case, Richey was driving a Harley-Davidson motorcycle late in the evening, and the police stopped Richey because they were looking for a Harley-Davidson motorcycle, with no additional details provided about the motorcycle, who had recently been observed driving

4

erratically. *Id.*, ¶3. Our supreme court held that there was not reasonable suspicion to stop Richey because the police did not have sufficient concrete evidence that Richey was the motorcyclist that had been observed driving erratically. *Id.*, ¶11. Morello moved for reconsideration of his suppression motion, arguing that the facts of **Richey** were sufficiently analogous to the facts of his stop. The circuit court denied Morello's reconsideration motion, concluding that **Richey** did not change the court's analysis of Morello's suppression motion.

¶10 Morello entered no-contest pleas to one count of OWI as a second offense and to one count of failure to install an ignition interlock device. The circuit court found Morello guilty of these two offenses and imposed fines, restrictions, and a 30-day jail sentence. Morello appeals his judgment of conviction.

## DISCUSSION

¶11 On appeal, Morello argues that the circuit court erroneously denied his suppression motion. Morello contends that there was not reasonable suspicion to initiate the stop because there was not sufficient evidence that Morello's vehicle was connected to the reported gunshots. Morello also contends that the tinted windows on his vehicle did not provide reasonable suspicion for the stop.

¶12 I affirm the circuit court's denial of Morello's suppression motion, but I do so on the ground that there was reasonable suspicion to stop Morello for illegally tinted windows. *See **State v. Earl***, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d

639, 770 N.W.2d 755 ("On appeal, [this court] may affirm on different grounds than those relied on by the [circuit] court.").[3]

## I. Standard of Review and Governing Legal Principles

¶13 Whether evidence should have been suppressed involves questions of fact and law. *State v. VanBeek*, 2021 WI 51, ¶22, 397 Wis. 2d 311, 960 N.W.2d 32. This court reviews the circuit court's findings of historical fact for clear error, but independently reviews the circuit court's application of the historical facts to constitutional principles. *Id.*

¶14 The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Wisconsin Constitution protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *State v. Tullberg*, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted); *see also State v. Robinson*, 2010 WI 80, ¶24 n.11, 327 Wis. 2d 302, 786 N.W.2d 463 (Wisconsin courts have historically interpreted the search and seizure provision of our state's constitution consistent with the United States Supreme Court's interpretation of the Fourth Amendment). "The temporary detention of a person during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' … within the meaning of the Fourth Amendment." *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569 (citation omitted).

---

[3] Because my conclusion with respect to Morello's tinted windows is dispositive, I do not address whether there was reasonable suspicion to stop Morello's vehicle because of the vehicle's possible connection to the reported gunshots. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶15   An officer has reasonable suspicion to initiate a traffic stop "when, at the time of the stop, he or she possesses specific and articulable facts which would warrant a reasonable belief that criminal activity [is or] was afoot." ***VanBeek***, 397 Wis. 2d 311, ¶28 (citation omitted).  Reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop.  ***State v. Houghton***, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143.  Whether reasonable suspicion exists is an objective inquiry that is based on the "facts known to the officer at the time of the stop … taken together with any rational inferences."  ***State v. Washington***, 2005 WI App 123, ¶16, 284 Wis. 2d 456, 700 N.W.2d 305.  Reasonable suspicion depends on the "totality of the circumstances" and requires the court to consider "'the whole picture' viewed together."  ***State v. Nimmer***, 2022 WI 47, ¶24, 402 Wis. 2d 416, 975 N.W.2d 598 (citations omitted).

## II.  Reasonable Suspicion

¶16   In the present case, the State argues that there was reasonable suspicion that Morello was violating a traffic law—namely, driving with illegally tinted front side windows.  *See **Houghton***, 364 Wis. 2d 234, ¶30 (reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop).  For the following reasons, I agree.

¶17   Wisconsin law permits the tinting of a vehicle's front side windows only if the tinting permits at least 50% of visible light to pass through the windows.  WIS. ADMIN. CODE § TRANS 305.32(4)(b)2.  In *State v. Conaway*, 2010 WI App 7, 323 Wis. 2d 250, 779 N.W.2d 182 (2009), this court concluded that the reasonable suspicion standard under the Fourth Amendment does not require the police to know with certainty whether a tinted window violates § TRANS 305.32, but instead requires that the police "reasonably suspect that the window violates

[§ TRANS 305.32]." **Conaway**, 323 Wis. 2d 250, ¶7. The court stated that this standard cannot be satisfied unless "the officer's testimony provides a basis for a finding that the officer had the ability to judge whether a tinted … window came close to or failed to meet the [legal] requirement." **Id.**, ¶13. As an example, this court stated that the reasonable suspicion standard would be satisfied "if an officer testifies that he or she is familiar with how dark a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing." **Id.**, ¶7.

¶18    In applying these standards in **Conaway**, this court concluded that the officer's testimony did not support reasonable suspicion because he "made no connection between his longevity or his tint meter training and his ability to differentiate between legally and illegally tinted glass." **Id.**, ¶9. The court reasoned that the officer's testimony that he had experience and training using a tint meter was not enough because he "did not … say that he had experience in correctly identifying windows that failed the tinting limitation." **Id.** The court further reasoned that "the fact that the officer had stopped numerous other vehicles for suspected window tint violations adds nothing [because] [t]he officer did not testify whether his prior suspicions were ever verified by subsequent testing." **Id.**, ¶11.

¶19    In the present case, Asilis's testimony was sufficient to support reasonable suspicion under **Conaway**. Asilis testified that he had been trained to use a "tint meter" and was familiar with how tint meters work. Asilis also explained that, on prior occasions, he had used a tint meter to verify whether he had correctly gauged the levels of tinting in a window. Additionally, Asilis testified that, as a result of this training and exposure to tint meters, he had gained experience in visually determining whether a window may exceed legal levels of

tinting. According to Asilis, when he initially noticed Morello's vehicle, the level of tinting on the front side windows made it difficult to distinguish the features of the driver and other possible occupants of the vehicle. Asilis explained that his observations of Morello's vehicle, together with his training and experience using a tint meter, led him to believe that Morello's front side windows had levels of tint exceeding the legal percentage. Based on this testimony, I conclude that Asilis provided a sufficient basis that he had "the ability to judge whether a tinted … window came close to or failed to meet the [legal] requirement." *See id.*, ¶13.

¶20 Morello argues that Asilis's testimony suffers from the same fatal infirmity as the law enforcement officer's testimony in ***Conaway*** because Asilis "did not testify as to what percentage of the time the tint meter confirmed [Asilis's] suspicions about an illegal tint." I do not read ***Conaway*** as establishing such a bright line rule. Indeed, in ***Conaway*** this court specifically recognized that an officer need not be able to "ascertain with certainty that there was a window tint violation," but rather "need only reasonably suspect that the window violates the regulation." ***Id.***, ¶7. Accordingly, this court determined that the reasonable suspicion standard would be satisfied if the officer "testifies that he or she is familiar with how dark a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing." ***Id.*** Here, as explained above, Asilis's testimony established that his training and experience had provided him with an ability to identify a window tint that exceeded the legal limit. This testimony sufficiently satisfied ***Conaway***.

¶21 Morello also argues that the tinted windows cannot provide the basis for reasonable suspicion because neither Asilis's report nor the criminal complaint state that Morello's tinted front side windows were a reason that Asilis initiated

the stop. Instead, Morello suggests that reasonable suspicion must be based on Asilis's stated justification for the stop—*i.e.*, that Morello's vehicle matched the description of a vehicle in the ongoing gunshots investigation. This argument fails because reasonable suspicion is based on the objective facts and circumstances of the stop, not the subjective motivations of the officer. *See State v. Baudhuin*, 141 Wis. 2d 642, 651, 416 N.W.2d 60 (1987) ("The officer's subjective intent does not alone render a … seizure of an automobile or its occupants illegal, as long as there were objective facts that would have supported a correct legal theory to be applied and as long as there existed articulable facts fitting the traffic law violation."); *State v. Newer*, 2007 WI App 236, ¶4 n.2, 306 Wis. 2d 193, 742 N.W.2d 923 ("[T]he officer's subjective motivation for making a stop is not the issue; if the officer has facts that could justify reasonable suspicion (or probable cause), it is of no import that the officer is not subjectively motivated by a desire to investigate this suspicion."). Therefore, Asilis's purported subjective motivation for initiating the stop does not alter my conclusion that there was reasonable suspicion to believe that Morello had illegally tinted front side windows.

¶22 Finally, Morello argues that the tinted windows cannot provide the basis for reasonable suspicion because the circuit court did not mention the window tint in its decision and did not "credit[]" Asilis's testimony that he believed the windows were illegally tinted. I disagree. When a court's conclusion is rooted in a witness's credibility but the court did not make any express credibility determinations, this court may assume that the circuit court "made implicit findings on [the] witness's credibility when analyzing the evidence." *State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844. Here, although the circuit court made no explicit credibility determinations, the court's determination regarding reasonable suspicion necessarily depended on

Asilis's credibility because he was the only witness presented by either party at the suppression hearing. There is no indication that the court had any doubts about Asilis's credibility. Accordingly, I assume that the court implicitly found Asilis's testimony to be credible, including his testimony about Morello's tinted windows.

## CONCLUSION

¶23 For the foregoing reasons, the judgment is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.