COURT OF APPEALS
DECISION
DATED AND FILED

May 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP2114-CR**

Cir. Ct. No. 2022CF126

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JOHN FRANCIS KRESSIN,

    DEFENDANT-APPELLANT.

---

        APPEAL from a judgment of the circuit court for Waushara County: SCOTT C. BLADER, Judge. *Affirmed*.

        Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   John Francis Kressin appeals a judgment, entered on his no-contest plea, convicting him of operating a motor vehicle while intoxicated (OWI), as a fourth offense.  Kressin argues that law enforcement lacked reasonable suspicion to stop the vehicle he was driving, and that the circuit court erred by denying his motion to suppress all evidence obtained as a result of the stop.  We reject Kressin's argument and affirm the judgment of the circuit court.

## BACKGROUND

¶2    A police officer stopped the vehicle that Kressin was driving because of a suspected window tint violation.  The stop resulted in the officer arresting Kressin for OWI.  Kressin moved to suppress all evidence obtained as a result of the stop, arguing that the stop was not supported by reasonable suspicion.  The circuit court denied the suppression motion after an evidentiary hearing.  Kressin appeals, challenging the court's denial of his suppression motion.

## DISCUSSION

¶3    Kressin argues on appeal that the arresting officer lacked the requisite level of suspicion to stop the vehicle that Kressin was driving.  Under the Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution, an investigative traffic stop must be supported by reasonable suspicion that a violation has been or will be committed.  *See State v. Post*, 2007 WI 60, ¶10 and n.2, 301 Wis. 2d 1, 733 N.W.2d 634; *see also State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569.  The stop must be based on "more than an officer's 'inchoate and unparticularized suspicion or hunch.'" *Post*, 301 Wis. 2d 1, ¶10 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  "[T]he officer 'must be able to point to specific and articulable facts which, taken together with rational inferences

from those facts, reasonably warrant' the intrusion of the stop." ***Post***, 301 Wis. 2d 1, ¶10 (quoting ***Terry***, 392 U.S. at 21).

¶4      Whether there was reasonable suspicion for a traffic stop is a question of constitutional fact, to which we apply a two-step standard of review. ***Post***, 301 Wis. 2d 1, ¶8. We uphold the circuit court's findings of historical fact unless they are clearly erroneous, but we independently review the application of the constitutional principles to those facts. ***Id.***

¶5      As an initial matter, Kressin does not argue that any factual finding by the circuit court is clearly erroneous. The court's findings are based on the testimony given by the arresting officer at the hearing on the suppression motion. The officer testified that, on the evening of June 2, 2022, while it was still light outside, he saw a red Explorer drive past him. Through an open passenger's side window of the vehicle, the officer saw that the driver avoided looking directly at him. The officer ran a check of the vehicle's registration and learned that the vehicle was registered to a male who had been deceased for several weeks. The officer also observed that the rear window on the passenger side had "too dark of [a] tint." The officer also testified in detail about his training and experience regarding window tint.

¶6      The arresting officer explained that he had 14 years of experience working in law enforcement. He learned through his professional training that, under Wisconsin law, the rear side windows in a vehicle must allow at least 35% light transmittance.[1] The officer testified that he had completed a ten-hour training

---

[1] Tinting of a vehicle's rear side windows is permitted when the tint "permits passage through the windows of at least 35% of the visible light striking the window." WIS. ADMIN. CODE § Trans 305.32(6)(b) (through Nov. 2024).

session on how to use a tint meter, which is a device that measures a window's tint level. Half of the training was done during daytime and half at night. The training involved making visual estimates of vehicles' tint levels and then testing the accuracy of the estimates using the tint meter.

¶7       The officer admitted that he did not have his tint meter with him when he stopped Kressin's vehicle. However, the officer testified on direct examination that, in his time as a law enforcement officer using the tint meter, he had become proficient at visually ascertaining the tint of vehicle windows. The officer testified that he had "made hundreds of stops" of vehicles based on tinting that was too dark, both with and without the tint meter. He testified, "I don't think there's a single car that I've stopped that hasn't had tint that was [il]legal." He further testified that this was because it was not his practice to stop vehicles for tint violations that look to be "on the fringe" of what is permitted. The officer testified that, in this case, the tint level was not on the fringe to his eye; rather, "the window tint was way too dark for that vehicle." Further details of the officer's testimony are discussed as necessary below.

¶8       The circuit court denied Kressin's suppression motion in an oral ruling. In addition to considering the testimony from the motion hearing, the court reviewed the officer's squad-camera video. The court rejected an argument from the State that there was reasonable suspicion for the investigative stop based on a vehicle registration violation. However, the court concluded that, based on the officer's testimony, the stop was supported by reasonable suspicion that there was a window tint violation.

¶9       Kressin argues that the circuit court erred in denying his suppression motion. In support of his argument, Kressin cites another case involving window

4

tint, *State v. Conaway*, 2010 WI App 7, 323 Wis. 2d 250, 779 N.W.2d 182 (2009). In *Conaway*, this court affirmed a circuit court order granting the defendant's motion to suppress evidence obtained from an investigative stop of a vehicle. *Id.*, ¶1. This court concluded that the State did not present articulable facts supporting a reasonable suspicion that the rear window of the vehicle failed the 35%-light-pass-through requirement. *Id.*, ¶4. The officer in *Conaway* testified that he had more than 13 years of experience as a state trooper, that he had received training on use of a tint meter, that he was aware of the 35%-light-pass-through requirement for rear windows, that he had stopped between 10 and 100 vehicles for illegal window tint, and that he had stopped the defendant's vehicle because the rear window appeared to have dark tint. *Id.*, ¶8. This court concluded that "nothing in the officer's testimony provides a basis for a finding that the officer had the ability to judge whether a tinted rear window came close to or failed to meet the 35%-light-pass-through requirement." *Id.*, ¶13. Kressin argues that, like the officer in *Conaway*, the officer in this case failed to connect his track record in estimating window tint to his ability to accurately determine the window tint level of the vehicle he stopped. We disagree, and we conclude that the facts of this case are distinguishable from the facts in *Conaway*.

¶10 Unlike in *Conaway*, the testimony of the officer in this case amounts to more than a hunch that the window tint was illegal. The officer testified in detail about his experience with stopping vehicles for window tint, specifying that he had made approximately 400 such stops. He explained that at least 200 of those stops were made without a tint meter, since only one tint meter is shared among more than 30 officers in Waushara County. For those stops when he used the tint meter, the officer testified that half of the stops occurred at night and half during the daytime.

¶11 In this case, unlike in *Conaway*, the officer did not testify merely that the rear side window appeared dark, but rather that it was "way too dark for that vehicle" and "definitely too dark of tint," and he explained his reasoning. The officer testified that, at the time of evening when he stopped Kressin's vehicle, it was light enough outside that he should have been able to see into the vehicle relatively well, but he could not. The officer testified with "100 percent" confidence that the tint of Kressin's rear side window was below 35%. The officer stated, "I would say it would have been at least 15 []percent." The officer also testified about why he believed the tint violation had occurred, explaining that "motorists often place after-manufacture tint on their windows not knowing that the windows are already tinted."

¶12 When the officer was asked on direct examination if he thought that he could state to a degree of certainty whether or not a vehicle's tint was compliant, he responded unequivocally, "Yes, sir." The officer also testified, "I've stopped hundreds of vehicles for tint and I haven't been wrong." The court found that the officer's testimony was credible, to the extent the testimony suggested that the officer knows an illegal tint when he sees one, and that he does not conduct stops when it is a close call whether a tint is illegal. The court explicitly credited the officer's testimony relating to his ability to understand the area of the law regarding window tint. This court will generally not disturb a circuit court's credibility determinations, and we discern no reason to do so here. *See State v. Turner*, 114 Wis. 2d 544, 550, 339 N.W.2d 134 (Ct. App. 1983).

¶13 The record in this case provided a factual basis for the circuit court to conclude that the arresting officer was able to distinguish between legal and illegal tints. Through his testimony, the officer was able to connect his experience and training with "his ability to differentiate between legally and illegally tinted glass"

in a way that was lacking in ***Conaway***, 323 Wis. 2d 250, ¶9. Here, the circuit court explained that the arresting officer's testimony reflected "a rather deep knowledge of the issue and a reflection by the officer of how and why tint infractions come about" and that the officer's testimony was "plausible, articulable, and based on experience."

## CONCLUSION

¶14 For all the foregoing reasons, we conclude that the traffic stop was supported by reasonable suspicion and the circuit court did not err when it denied Kressin's motion to suppress the evidence obtained as a result of the stop.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.