STATE of Wisconsin, Plaintiff-Respondent,

v.

Tabitha A. SHERRY, Defendant-Appellant.†

Court of Appeals

*No. 03–1531–CR. Submitted on briefs December 5, 2003.—Decided October 7, 2004.*

2004 WI App 207

(Also reported in 690 N.W.2d 435.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig R. Day* of the *Law Office of Craig R. Day*, Lancaster.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David J. Becker*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. This is a search and seizure case involving a temporary investigative traffic stop and a subsequent warrantless search of the stopped car. The stop and search led to the discovery of marijuana. Tabitha Sherry moved to suppress the marijuana, arguing that both the stop and the search were illegal. After the circuit court declined to suppress the marijuana evidence, Sherry entered a no contest plea to the charge of possessing marijuana with intent to deliver. She now appeals the suppression rulings.

¶ 2. We first address whether information, including predictions, supplied by an anonymous tipster, and police corroboration of some of that information, constitute reasonable suspicion supporting the traffic stop. We then determine whether the warrantless vehicle search was permissible. The circuit court concluded that the temporary investigative stop was supported by reasonable suspicion and that the automobile search was supported by probable cause. We agree and affirm.

## Background

¶ 3. The Crawford County Sheriff's Department received an anonymous "Crime Stoppers tip" predicting that a vehicle carrying a large amount of marijuana would be traveling from Readstown, in Vernon County, to a trailer court in Soldiers Grove, in neighboring Crawford County. The caller provided information about the car, its occupants, and its route. An officer took up a surveillance position near Soldiers Grove and, after about forty-five minutes, spotted a vehicle matching the description given by the caller. The officer pulled out, made additional observations, and stopped the suspect car. After obtaining ownership information and the identity of the driver and the passenger, the officer searched the car without consent and found about 170 grams of marijuana under the front passenger seat. We will supply more details below after discussing the applicable legal standards.

## Discussion

### Standard of Review

¶ 4. Whether facts constitute reasonable suspicion justifying a temporary investigatory stop is a question of law that we review *de novo*. *State v. Williams*, 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. Whether facts constitute probable cause justifying the warrantless search of an automobile is likewise a question of law that we review *de novo*. *State v. Miller*, 2002 WI App 150, ¶ 12, 256 Wis. 2d 80, 647 N.W.2d 348.

*Whether Reasonable Suspicion
Supported the Stop of Sherry's Car*

¶ 5. Sherry first argues that the stop of her car was not supported by reasonable suspicion. Sherry focuses on the fact that much of the information supporting reasonable suspicion was provided by an anonymous caller. The test we must apply asks whether the anonymous tip, combined with other information known to the police, supplied "sufficient indicia of reliability to provide reasonable suspicion." *See Alabama v. White*, 496 U.S. 325, 326–27 (1990).

¶ 6. The parties suggest, and we agree, that the most apt guidance on this topic is found in two decisions of the United States Supreme Court: *White* and *Florida v. J.L.*, 529 U.S. 266 (2000). Further, we agree with the State that the primary difference between the information found sufficient in *White* and the information found insufficient in *J.L.* is that the anonymous caller in *White* demonstrated familiarity with the suspect, whereas the anonymous caller in *J.L.* did not. We conclude that police in this case possessed reasonable suspicion justifying the stop because, as in *White*, the anonymous caller demonstrated a familiarity with Sherry and her activities. We begin by comparing *White* and *J.L.*

¶ 7. In *White*, police received a telephone call from an anonymous person saying that Vanessa White would be leaving a specified apartment in a specified apartment complex at a particular time in a brown Plymouth station wagon with a broken right taillight. *White*, 496 U.S. at 327. The caller said White would possess cocaine in a brown attaché case and would go to a certain motel. *Id.* Based on this information, police set up surveillance

of the identified apartment complex. *Id.* The officers saw a brown Plymouth station wagon with a broken right taillight in front of the building the caller had identified. *Id.* The officers also saw a woman, later identified as White, leave the apartment building, carrying nothing, and enter the station wagon. *Id.* The officers followed White, and she drove the most direct route toward the motel identified by the anonymous caller. *Id.* The officers stopped White "just short" of the motel. *Id.* A subsequent search of White's car revealed an attaché case containing marijuana. *Id.*

¶ 8. The issue in *White* was "whether the [anonymous] tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 326–27. The *White* Court acknowledged that various details predicted by the caller had not been verified by police prior to the stop. *Id.* at 331. For example, police did not corroborate White's identity, the specific apartment from which she left, or the presence of the attaché case. *Id.* at 327, 331. Also, by stopping White short of the predicted destination, police could not know whether White would have pulled into the motel or driven past. *Id.* at 331. Nonetheless, the Court concluded that reasonable suspicion was present because police observed that a woman left the apartment building described by the caller at the approximate time predicted, got into the specified station wagon, and took the most direct route possible to the motel. *Id.* The Supreme Court explained that the anonymous caller provided *predictive* information and the police verified significant aspects of that predictive information:

> What was important was the caller's ability to predict respondent's *future behavior,* because it demonstrated inside information—a special familiarity with respon-

dent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to [the specified motel]. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

*Id.* at 332 (citation omitted).

¶ 9. In contrast, the anonymous caller in *J.L.* did not provide predictive information. The anonymous caller in *J.L.* told police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *J.L.*, 529 U.S. at 268. Based on this information only, officers proceeded to the bus stop, located a black male wearing a plaid shirt, and initiated an investigative stop. *Id.* A search following the stop revealed that the suspect was carrying a concealed weapon without a license, in violation of Florida law. *Id.* at 268–69. The *J.L.* Court concluded that the stop was illegal, explaining:

The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.

*Id.* at 271.

¶ 10. With this guidance in mind, we turn to the facts in this case.

¶ 11. Sometime between 8:00 and 8:30 p.m., on an evening in April 2002, a Crawford County Sheriff's

201

Department officer received a call from the sheriff's department dispatcher. The dispatcher informed the officer that the department had gotten an anonymous "Crime Stoppers tip of a vehicle that would be travelling from the Readstown area to the Soldiers Grove area . . . with a large amount of marijuana in the vehicle." Readstown is in the southern end of Vernon County, and Soldiers Grove is in the northern end of Crawford County, about four miles apart. The caller said the marijuana "would be either in the center console or under the seat." The caller also gave the following information: the make of the car; the color of the car; the license plate number of the car; that the car was Tabitha Sherry's; that Sherry would be in the car; and that the car was going to "a trailer court in Soldiers Grove." The caller said that a person named Ryan Saint might be in the car and, if he was, he would be driving.

¶ 12. The officer took up a surveillance position about two miles north of Soldiers Grove on Highway 61. Highway 61 is "the only highway between the two towns without going several miles north." At approximately 9:30 p.m., the officer saw a car, matching the description given by the anonymous caller, heading toward Soldiers Grove. Because it was dark out and the vehicle was a dark color, the officer "couldn't tell for sure" whether the car's color matched the description given by the caller, but the make of the car did match the caller's description. The officer pulled out in his unmarked vehicle and followed the suspect car. The officer verified that the car had the license plate number provided by the anonymous caller. The officer observed two people in the vehicle: "what appeared to be a male driver and a female passenger." He thought the driver was a male because of the driver's "short"

haircut. Based on this information, the officer stopped the car. The stop occurred in Soldiers Grove.

¶ 13. The anonymous caller in this case provided predictive information which, if true, demonstrated "a special familiarity with [Sherry's] affairs." *White*, 496 U.S. at 332. The general public would have had no way of knowing that Sherry would soon be leaving the Readstown area in a particular car, no way of knowing that a man might accompany Sherry on that trip, and no way of knowing that if the man did accompany Sherry he would be driving her car.[1] When the Crawford County officer verified this predictive information, it was reasonable for the officer to believe that a person with access to such information also had access to reliable information about Sherry's illegal activities.

¶ 14. There are differences between this case and the investigatory stop found to be legal in *White*. But those differences amount to a wash. In *White*, the police more specifically verified starting and ending points of the car's predicted route. But this case involves a prediction not present in *White*. Here, the anonymous caller predicted that Sherry might be accompanied by a man and, if so, that man would be driving Sherry's car. Thus, the information provided by the caller and the police corroboration of that information compare favor-

---

[1] The record does not specify that the caller indicated that Sherry would be leaving shortly. However, similar to the situation in *Alabama v. White*, 496 U.S. 325 (1990), we may infer that the caller provided this information because the police responded to the call by immediately setting up surveillance. *See id.* at 331 ("Given the fact that the officers proceeded to the indicated address immediately after the call and that respondent emerged not too long thereafter, it appears from the record before us that respondent's departure from the building was within the timeframe predicted by the caller.").

ably with the information and corroboration found to be sufficient in *White*. We conclude that the police in this case possessed reasonable suspicion to justify the temporary investigative stop.

*Whether Probable Cause
Supported the Search of Sherry's Car*

¶ 15. Sherry next argues that, regardless whether the officer legally stopped her car, the subsequent warrantless non-consent search of her car was illegal. An automobile may be searched without a warrant if there is probable cause to search the vehicle and the vehicle is readily mobile. *State v. Marquardt*, 2001 WI App 219, ¶¶ 31–32, 247 Wis. 2d 765, 635 N.W.2d 188. Sherry does not dispute that her car was readily mobile. Rather, she contends the officer lacked probable cause. We disagree.

¶ 16. The applicable probable cause standard is well established: "A finding of probable cause is a common sense test. 'The task . . . is simply to make a practical, commonsense decision whether, given all the circumstances . . ., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Ward*, 2000 WI 3, ¶ 23, 231 Wis. 2d 723, 604 N.W.2d 517 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

¶ 17. As in *Gates*, here we address the existence of probable cause in the context of information provided by an anonymous tipster. Thus, we look to *Gates* for guidance.

¶ 18. In *Gates*, the Supreme Court rejected the proposition that, to supply probable cause, information

provided by an anonymous tipster had to pass a "two-pronged test," derived from its decision in *Spinelli v. United States*, 393 U.S. 410 (1969), under which the anonymous information and any other facts known to the police would have to (1) reveal the informant's "basis of knowledge" and (2) establish either the "veracity" of the informant or the "reliability" of the informant's information. *Gates*, 462 U.S. at 228, 237–38. The Supreme Court recognized that it would be virtually impossible for information from an anonymous informant to pass such a test:

> [T]he veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs.

*Id.* at 237. Instead, as the *Gates* Court explained, the two *Spinelli* prongs are more accurately described as "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations." *Id.* at 233. Thus, as applied to assessing the reliability of an anonymous tip, a deficiency in one factor may be compensated for by "some other indicia of reliability" when considered in the context of the totality of the circumstances. *Id.*

¶ 19. A recognized "indicia of reliability" of an anonymous tip is police corroboration of details, particularly details involving predicted behavior. *See id.* at 241. The *Gates* Court explained:

> The [anonymous] letterwriter's accurate information as to the travel plans of each of the Gateses was of a character likely obtained only from the Gateses themselves, or from someone familiar with their not entirely ordinary travel plans. If the informant had access to

accurate information of this type a magistrate could properly conclude that it was not unlikely that he also had access to reliable information of the Gateses' alleged illegal activities. Of course, the Gateses' travel plans might have been learned from [some other source] . . . . But, . . . probable cause does not demand the certainty we associate with formal trials. It is enough that there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability.

*Id.* at 245–46 (footnote omitted).

■

¶ 20. Finally, probable cause may exist even if the predicted behavior corroborated by the police is, when viewed in isolation, innocent behavior. Police themselves need not observe suspicious behavior. *See United States v. Martinez*, 764 F.2d 744, 746 (10th Cir. 1985) ("It is all right that these corroborations were only of 'innocent' details.").

¶ 21. We now apply these principles to the facts in this case to determine whether there was probable cause to believe Sherry's car contained marijuana. The anonymous caller said that Sherry would be traveling from Readstown to Soldiers Grove with "a large amount of marijuana." Prior to the stop, the officer had verified the following details: the make of the car, the license plate number of the car, the approximate time of travel, the direction of travel, the car's likely general starting point (Readstown), its apparent destination (Soldiers Grove), the number of occupants, and, since there were two occupants, that a male appeared to be driving. *See* ¶¶ 11–12, *supra*.

¶ 22. After the stop, but before the search, the officer corroborated additional details of the anonymous tip. The passenger was identified as Tabitha Sherry, and the driver as Ryan Saint. The car was Sherry's car; Sherry told the officer that the owner was her mother's boyfriend and that he had given her the car as a present. Thus, the officer corroborated these additional details: Sherry was the female passenger, the car was her car, a man named Ryan Saint was in the car, and Saint was driving.

¶ 23. We conclude that the information provided by the anonymous caller, and corroboration of several details by the police officer, demonstrate that a reasonable police officer could believe that the anonymous caller was a person familiar with Sherry's activities. The caller accurately predicted that Sherry would soon be traveling in her car with a man named Ryan Saint from Readstown toward Soldiers Grove. The caller not only predicted that Ryan Saint might be present in the car, but that, if he was, he would be driving Sherry's car. This predictive information indicates that the caller was a person with knowledge of Sherry, her activities, and her plans. The information was sufficient for an officer, applying the common-sense probable cause standard, to believe there was a fair probability that Sherry was transporting marijuana in her car.

¶ 24. Therefore, we affirm the circuit court's conclusion that the warrantless search of Sherry's car was supported by probable cause.

*By the Court.*—Judgment affirmed.