# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 25, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1072-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2024CT196**

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

MICHAEL P. BUNDY,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Affirmed*.

¶1 GRAHAM, P.J.[1] The State appeals a circuit court order that suppressed evidence obtained in a traffic stop. The State argues that the court erroneously suppressed the evidence because the officer who initiated the stop had

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

reasonable suspicion to believe that a vehicle driven by Michael Bundy violated state vehicle standards with respect to window tinting. I reject the State's arguments and affirm the suppression order.

## BACKGROUND

¶2      A City of La Crosse police officer was on patrol one early morning in August 2024 when he observed a vehicle traveling in front of him and that the vehicle's rear window was darkly tinted such that the officer could not see the silhouette of the driver. When the vehicle turned a corner, the officer observed that the rear passenger window was also darkly tinted. The officer later testified about his understanding of state standards governing window tinting, and about his training and experience in identifying windows that are too dark to comply with those standards. Based on this training and experience, the officer suspected that the tints on the rear window and the rear passenger window were too dark to comply with WIS. ADMIN. CODE § Trans 305.32(5)(b) and (6) (through May 2026).[2] The officer initiated a traffic stop.

¶3      The officer approached the vehicle and made contact with the driver, who was later identified as Bundy. The officer told Bundy about the basis for the stop and Bundy responded that the tint on the windows was "factory tint."

¶4      As the officer was engaging with Bundy, the officer observed signs that Bundy might be intoxicated. The officer also observed what he believed to be a mixed alcohol drink in the center console and a plastic container containing a substance he believed to be marijuana. There is no dispute that, if the officer had

---

[2] All references to WIS. ADMIN. CODE § Trans are to the November 2024 register.

reasonable suspicion to stop the vehicle based on an equipment violation, the officer also had reasonable suspicion to extend the stop to investigate for crimes including operating while intoxicated and, eventually, probable cause to arrest.

¶5      Bundy was placed under arrest. He was later charged with operating a motor vehicle while under the influence of an intoxicant and operating with a prohibited alcohol concentration, both as third offenses.

¶6      Bundy filed a motion to suppress all evidence derived from the traffic stop. He argued, among other things, that the officer did not have reasonable suspicion of any equipment violation or driving offense. Bundy argued that the traffic stop violated his rights under the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution.

¶7      In response, the State argued that the officer's observations of the tinted windows provided reasonable suspicion to stop Bundy's vehicle. According to the State, the police report provided a factual basis that the officer "could not see through the windows at all" and the "complete opacity of Bundy's windows provided the necessary reasonable suspicion" that the tinting violated WIS. ADMIN. CODE § Trans 305.32.

¶8      The officer testified as follows at the motion hearing. As he understood it, tints on rear and rear passenger windows are compliant with the state standard if they allow at least 35 percent of light to pass through the windows. The officer had been trained to identify "how dark a minimally compliant window appears," and when he is considering whether a tint might be illegal, he is "looking for how much light is reasonably being transmitted just based on appearance through the window." With respect to the stop of Bundy's

vehicle, the officer testified that "[i]t was difficult to see the silhouette of the occupants inside of the vehicle under a well-lit area."

¶9 The officer had conducted more than 80 traffic stops based on suspicion of illegal window tint, and he had used a tint meter to verify the illegality of the tint in all but a handful of those stops. In each of those cases, his suspicion that the tint was below the minimum transmission standard was proven correct. Likewise, here, the officer used a tint meter to test the tinting on the rear side window of Bundy's vehicle after the stop, and the meter "registered" just "20 percent of light being transmitted through the window."

¶10 On cross-examination, it became apparent that the officer was unaware that WIS. ADMIN. CODE § Trans 305.32 differentiates between factory-tinted windows and windows that are subject to after-market tinting. More specifically, the officer was unaware of the portions of § Trans 305.32 that provide that, if "[t]he windows are tinted by the manufacturer of the glazing and are installed as part of the original manufacturing process," they are lawful regardless of the amount of light that can pass through. The officer testified that he was not trained to differentiate between factory-installed tints and after-market tints. He appeared to assume that factory-installed tint would have to comply with the 35-percent transmission standard, and that tint must be illegal after-market tinting if the tint allowed less than 35 percent of light to pass through.

¶11 At the close of the hearing, the circuit court found that the tint was factory installed, and therefore legal. The court questioned the propriety of the stop, which had been based at least in part on the officer's incomplete understanding of the law. The court asked whether "every officer" who is trained in the state can "use the excuse that they have not been trained in … factory versus

… non-factory window [tint] as a part of the reasonable suspicion to stop a vehicle." The court was unable to find any case law on that issue and ordered further briefing from the parties.

¶12 The State took the position that there was reasonable suspicion based on the officer's observation of the dark tint on the windows of Bundy's vehicle and his familiarity with "how dark a minimally complying window appears." It argued that "[t]he inquiry of whether the vehicle possessed factory-level tint is irrelevant in terms of supporting reasonable suspicion." In response, Bundy argued that "[a] standard that allows police to stop any vehicle by just assuming [that dark tint] is after-market tinting is not a reasonable standard" and is "highly susceptible of abuse."

¶13 The circuit court granted Bundy's motion to suppress the evidence obtained during the traffic stop. The court determined that "[t]he burden is on the State to prove that a traffic stop passes constitutional muster" and the State had not met its burden. The State appeals.

**DISCUSSION**

¶14 Under Wisconsin law, tinted vehicle windows are legal if the tinting was done as part of the manufacturing process and the windows were factory installed. *See* WIS. ADMIN. CODE § Trans 305.32(5)(b)1., (6) (permitting tinting if "[t]he window is tinted by the manufacturer of the glazing and is installed as part of the original manufacturing process"). By contrast, if tint is added to a window through the after-market application of tinting film, its legality depends on the opacity of the window, which is measured by the percentage of the visible light striking the window that can pass through. For rear windows and rear passenger windows that are subject to after-market tinting, at least 35 percent of the visible

5

light striking the window must be allowed to pass through.[3] § Trans 305.32(5)(b)2., (6) (permitting "tint[ing] by the application of tinting film to the inside of the glazing provided that the combination of the glazing and tinting film permits passage through the window of at least 35% of the visible light striking the window"); *see also* **State v. Conaway**, 2010 WI App 7, ¶3, 323 Wis. 2d 250, 779 N.W.2d 182 (summarizing these standards).

¶15    Here, it is undisputed that Bundy's rear and rear passenger windows allowed just 20 percent of the visible light striking the window to pass through.

---

[3] WISCONSIN ADMIN. CODE § Trans 305.32 provides in relevant part:

**(5)**

….

> **(b)** Tinting of the rear window is permitted as follows:
>
> 1. The window is tinted by the manufacturer of the glazing and is installed as part of the original manufacturing process.
>
> 2. The window is tinted by the application of tinting film to the inside of the glazing provided that the combination of the glazing and tinting film permits passage through the window of at least 35% of the visible light striking the window. The tinting films permitted under this subdivision may not be reflective.
>
> ….

**(6)** Tinting of rear side windows is permitted as follows:

> **(a)** The windows are tinted by the manufacturer of the glazing and are installed as part of the original manufacturing process.
>
> **(b)** The windows are tinted by the application of tinting film to the inside of the glazing provided that the combination of the glazing and tinting film permits passage through the windows of at least 35% of the visible light striking the window. The tinting films permitted under this subdivision may not be reflective.

Therefore, if the tinting had been added by the after-market application of tinting film, it would violate the Wisconsin standard. However, it is also undisputed that the tinted windows of Bundy's vehicle were factory installed. As such, the windows did not actually violate the Wisconsin standard.

¶16 The issue in this case does not turn on whether the tinted windows on Bundy's vehicle actually violated the Wisconsin standard. Rather, the issue turns on whether the officer had reasonable suspicion to believe that the tinted windows violated the Wisconsin standard.[4] If so, the officer had reasonable suspicion of an equipment violation, which justified the traffic stop.

¶17 In some respects, the parties' appellate briefs resemble ships passing in the night. The State focuses on the fact that the officer had training and experience that allowed him to gauge whether window tints were compliant with a 35-percent transmission standard, and on the case law that sets forth the principle that officers do not have to rule out innocent explanations to have reasonable suspicion to stop a vehicle. *See Conaway*, 323 Wis. 2d 250, ¶7. By contrast, Bundy focuses on a different line of cases that specifically address an officer's mistake of law regarding equipment violations.

¶18 The State argues that reasonable suspicion is a relatively low bar, and it cites *Conaway* for the proposition that dark window tint may provide reasonable suspicion if there is evidence of an officer's ability to correctly

---

[4] Reasonable suspicion must be based on "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990) (citation omitted). Whether a given set of facts satisfies the standard is a question of law that this court reviews de novo. *State v. Sherry*, 2004 WI App 207, ¶4, 277 Wis. 2d 194, 690 N.W.2d 435.

distinguish legal window tint from tint that is too dark. According to the State, the possibility that the tint might have been factory installed—and therefore not subject to the 35-percent transmission standard—is what the law refers to as an "innocent explanation." As a general rule, case law establishes that officers do not have to rule out innocent explanations to have reasonable suspicion or probable cause. *See id.*, ¶5 ("Reasonable suspicion does not require ruling out innocent explanations," and "if any reasonable inference of wrongful conduct can be 'objectively discerned,' officers may temporarily detain an individual for purposes of investigation."); *State v. Moore*, 2023 WI 50, ¶15, 408 Wis. 2d 16, 991 N.W.2d 412 ("an officer is not required to draw a reasonable inference that favors innocence when there also is a reasonable inference that favors probable cause").

¶19     If considered without reference to other cases, the State's argument would be compelling. Just as an officer does not have to rule out the possibility that an odor that smells like illegal marijuana is actually legal hemp to have probable cause to arrest for possession of marijuana, *see Moore*, 408 Wis. 2d 16, ¶15, the premise here would be that an officer does not have to rule out the possibility that a window tint that is dark enough to be illegal if applied after-market is actually legal because it is factory installed.

¶20     However, the State does not address a separate line of cases that support the opposite conclusion. As Bundy points out, this line of cases specifically addresses mistakes of law regarding equipment violations. *See State v. Houghton*, 2015 WI 79, 364 Wis. 2d 234, 868 N.W.2d 143; *State v. Lerdahl*,

No. 2014AP2119-CR, unpublished slip op. (WI App Aug. 4, 2015).[5] These cases appear to be fully on point and support the circuit court's decision.

¶21    In *Houghton*, the arresting officer purported to identify two alleged equipment violations as his basis for a traffic stop: the presence of certain items in the windshield; and the fact that the vehicle was missing a front license plate. *Houghton*, 364 Wis. 2d 234, ¶7.  Our supreme court determined that there was reasonable suspicion based on the items in the windshield.  *Id.*, ¶¶70, 80. However, had the stop been based solely on the missing front license plate, the stop would not have been supported by reasonable suspicion and would have been unconstitutional.  *Id.*, ¶¶75-76.  To the extent the officer believed that Wisconsin law required all vehicles to have a front license plate, that was an objectively unreasonable misinterpretation of the administrative code, and the officer did not have particularized suspicion that Houghton's vehicle was in the category of vehicles that are legally required to have a front license plate.  *Id.*, ¶¶73-74, 78.

¶22    Our supreme court discussed its reasoning with respect to the license plate issue as follows:

> We turn briefly to the issue of Houghton's "missing" front license plate.  Although the State concedes that [the officer's] interpretation of the license plate statute was not objectively reasonable, we choose to address this issue to provide guidance in future cases ….
>
> It is clear that WIS. STAT. § 341.15 requires a vehicle to display a front license plate only when two license plates are issued for that vehicle.  [The officer's] belief that Houghton was violating the statute by not having a front plate was not a reasonable mistake of law to the

---

[5] I cite this one-judge authored opinion for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

extent that it implies that *all* vehicles must display a front license plate.

An officer who observes a vehicle driving without a front license plate may have no way of knowing whether that vehicle is required to display a front plate. Whether a vehicle is indeed required to display a front plate is both a question of law and a question of fact—the operative fact being whether the vehicle was issued two plates. Thus, it could perhaps be argued that a stop based on the lack of a front plate when the vehicle was issued only one plate is based on a mistake of *fact* rather than a mistake of law.

Because searches and seizures *can* be based on mistakes of fact, we confront the question of whether the lack of a front license plate, *without more*, may give rise to reasonable suspicion to conduct a traffic stop. To answer this question in the affirmative, we would have to hold that it is reasonable for a police officer in Wisconsin to believe that, if a vehicle is operating on a Wisconsin road, it must have been issued two license plates.

Such a belief would usually be unreasonable. Wisconsin borders four other states[, at least some which may issue just one license plate to vehicles registered in that state], and residents from those and many other states pass through Wisconsin on a regular basis. That *most* vehicles on Wisconsin roads might be registered in Wisconsin and *most* vehicles registered in Wisconsin might be issued two plates is not enough to conclude that a stop of a vehicle *solely* because it lacks a front license plate passes constitutional muster.

On the other hand, if an officer observes some indicia that a vehicle without a front license plate is from Wisconsin, then the officer may indeed have reasonable suspicion to stop the vehicle. Perhaps the most common indication would be a Wisconsin plate attached to the rear of the vehicle in question. However, other things may clue an officer in to a vehicle's origins as well—for example, markings indicating an affiliation with a local business.

Here, however, there was no initial indication that Houghton's vehicle was from Wisconsin. Once [the officer] was behind Houghton's vehicle, it would have become apparent from the rear plate that the vehicle was registered in Michigan. Thus, to the extent that [the officer] may have believed that Houghton was violating the law by not having a front license plate displayed, we hold

that belief was neither a reasonable mistake of law nor a reasonable mistake of fact.

*Id.*, ¶72-78 (citations omitted).

¶23 This court confronted a similar situation in *Lerdahl*, No. 2014AP2119-CR. There, the arresting officer pulled Lerdahl's vehicle over after noticing that it was not equipped with a working high-mount brake light. *Id.*, ¶2. However, the relevant administrative code provision was unambiguous—a working high-mount brake light is not required of every vehicle, only for those vehicles that were originally manufactured with a high-mount brake light. *Id.*, ¶17 (citing WIS. ADMIN. CODE § Trans 305.15(5)(a)). And the State did not introduce any evidence suggesting that the officer had any information or knowledge concerning the likelihood that Lerdahl's vehicle was originally manufactured with a high-mount brake light. *Id.*, ¶19. Accordingly, following the rule from *Houghton*, the officer lacked reasonable suspicion for the stop. *Id.*

¶24 Bundy discusses these cases at length in his respondent's brief and, as he explains, these cases would appear to be directly on point here. Although the officer appeared to assume that the rear and rear passenger windows of all vehicles have to comply with the 35-percent transmission standard, that was an objectively unreasonable misinterpretation of WIS. ADMIN. CODE § Trans 305.32. And, it is undisputed that the officer did not observe any indicia that the windows in Bundy's vehicle fell into the category of windows that are subject to the 35-percent transmission standard.

¶25 The State does not cite *Houghton* or *Lerdahl* in its reply brief, much less does it attempt to distinguish or develop any argument about them. I take the State's failure to address Bundy's argument about *Houghton* and *Lerdahl* as a

concession that, consistent with the holding of these cases, the circuit court properly granted the motion to suppress. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (lack of a response may be taken as a concession).

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.